**Jarvis D' Andre HOWARD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–96–00299–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 4, 1997.

Discretionary Review Refused May 6, 1998.

Tony Aninao, Houston, for Appellant.

John B. Holmes, Alan Curry, Houston, for Appellee.

Before COHEN, WILSON and HEDGES, JJ.

## OPINION

COHEN, Justice.

A jury convicted appellant of murdering Frederick Eugene Gooden by shooting him with a deadly weapon, namely a firearm, and the judge assessed punishment of life in prison and a $10,000 fine.   We affirm.

### Factual Sufficiency Review

In his first point of error, appellant challenges the factual sufficiency of the evidence to prove that he was the person who committed the murder.   We follow the usual standard of review.    *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996).

When he was killed, Frederick Gooden and Jashara Holiday were living together "off and on" at Holiday's apartment. On the evening of February 25, 1994, appellant, Loretta Lewis, Prentice Holiday, and Jashara Holiday went to a party together. It was Ms. Holiday's twenty-first birthday. Loretta Lewis had changed clothes there and left some clothes. They all spent the night at the residence where the party was held. Appellant slept with Loretta Lewis.

Holiday and Lewis returned to Holiday's apartment at about 7:00 or 8:00 p.m. the following day, February 26. Lewis found that her clothes were missing from the apartment. Ms. Lewis was angry and decided that the deceased, Mr. Gooden, had taken the clothes.

On the night of February 27, 1994, Gooden was at Holiday's apartment, along with Holiday and her daughter. No one else was present. He was baking a cake. Appellant came up the back stairs of the apartment wearing a black shirt, black pants, a black jacket, and a blue bandana around his neck. When he came in the back door, he seemed angry, and confronted Gooden that there were "some clothes missing from the house and Loretta said it was Fred." Gooden denied having stolen any clothes. Ms. Holiday also told appellant that the deceased had not stolen Ms. Lewis's clothes because he had never stolen anything from her.

Appellant left the apartment and went down the back stairs to the street with Ms. Holiday following him, telling him the deceased would never steal anything. A maroon car with tinted windows was parked in the street, and appellant got into the front passenger seat. Then Ms. Holiday heard appellant say, "F___ this s___," and saw him open the car door and run back up the stairs.

Ms. Holiday was following him up the stairs when she heard one gunshot. Appellant came out of the apartment carrying a pistol and with the bandana covering his nose and mouth. Ms. Holiday ran into her apartment to find the deceased on the kitchen floor shot in the temple. She immediately called the police.

Jashara Holiday gave a written statement to the police that night accurately describing appellant, but out of fear she did not name him then. Two days later, after having been encouraged by her mother to tell the truth, she identified appellant's photograph in a photo spread.

At the time of her testimony, Ms. Holiday was on probation for two drug delivery convictions.

One fired .380 cartridge case was recovered by police at the scene. A cake, a broken cake plate, and a butter spreading knife were found on the floor by Gooden's body, as if he had been making a cake.

For the defense, Loretta Lewis testified that she left some clothes at Ms. Holiday's apartment. She was upset to lose them from Holiday's apartment and told appellant about that "two days or three days" after the theft.

Ms. Lewis was convicted of theft in 1992.

Gertrude Landor was a defense alibi witness. She testified that appellant came to her apartment on the evening of February 25, 1994, and remained until February 28 at noon, neither of them ever leaving the apartment during that time for any reason. Ms. Landor's two sons, eight and four years old, were also living with her. They sometimes left to play, but Ms. Landor and appellant never left the apartment. Ms. Landor and appellant were "boyfriend and girlfriend" in 1992, but not in February 1994.

Appellant testified that he knew Jashara Holiday, and had been in her apartment. Loretta Lewis had told him about her missing clothes. He denied ever having an intimate relationship with Ms. Lewis. On February 25, he went to Gertrude Landor's apartment and did not leave until noon on February 28. During that time, they watched television, drank, played dominoes and cards, and ate whatever food was in the apartment. Appellant denied that he and Ms. Landor were having an intimate relationship at that time.

In rebuttal for the State, Jashara Holiday testified that Loretta Lewis came to see her on February 28, 1994, the day after the murder, and told her that she was sorry for what appellant did to the deceased. This

rebutted Lewis's earlier testimony in which she denied having made such a statement.

The jury's verdict in this case was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. The physical evidence corroborated Holiday's testimony. Appellant admitted that he knew Ms. Holiday, that he had been in her apartment, and that he knew Ms. Lewis and had discussed with her the missing clothes. It was understandable that Ms. Holiday did not immediately give appellant's name to the investigating officers as the killer since he knew her and where she lived. The jury was free to reject the alibi testimony of Ms. Landor and appellant. This is not the exceptional case contemplated in *Clewis*.

We overrule the first point of error.

### Limitation of Cross–Examination

◼ In his second and third points of error, appellant complains that the trial judge erroneously limited his cross-examination of State's witness Jashara Holiday. The record reveals that these points were not preserved for review.

During the cross-examination of Ms. Holiday, the following occurred:

Q. Now, ma'am, you testified on direct examination that you're on probation for a drug offense; is that correct?

A. Yes.

Q. As a matter of fact, you're on probation for two drug offenses; is that correct?

A. Yes.

Q. Was Frederick Gooden also involved in drugs?

[PROSECUTOR]: Your Honor, I'm going to object that—

A. No.

[PROSECUTOR]:—that is improper.

THE COURT: Sustained.

A. No.

THE COURT: Excuse me, Ms. Holiday. Approach the bench.

Any excluded testimony was not preserved by offer of proof, as required by law. TEX. R.CRIM. EVID. 103(a)(2); *Garza v. State*, 846 S.W.2d 936, 939 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd).

We overrule the second and third points of error.

### Denial of Hearsay Objections

In his fourth and fifth points of error, appellant contends that the trial court erred in overruling his hearsay objections to the testimony of two witnesses during the punishment stage of trial. The trial judge found that testimony concerning two extraneous murders consisted of statements made by coconspirators.

### a. Murder of Gilliard

◼ Donald Brown testified that appellant and Jimmy Walker arrived at Brown's house together. Donald Gilliard was also at the house. Appellant and Walker left for awhile, then returned together, Walker, as usual, carrying an Uzi. Appellant prepared a plate of food for himself, and Walker sat down. Walker was not angry or upset, but without saying a word, he suddenly walked to the back of the house and shot Gilliard in the head. Appellant continued to eat and "just kind of looked back" when the shot was fired. Walker told appellant to go to the back to remove Gilliard's jewelry and empty his pockets. Appellant stopped eating long enough to go to the back; he was putting something in his pocket when he came out. Walker and appellant left Brown's residence together. Gilliard's jewelry had been removed and his pants pockets turned inside out.

At a hearing out of the jury's presence, the trial court determined that Walker's instruction to appellant to get Gilliard's valuables was admissible under TEX.R.CRIM. EVID. 801(e)(2)(E), as follows: [1]

THE COURT: The Court finds that there is a conspiracy that exists between Jimmy Walker and the defendant, Jarvis Howard,

---

**1.** At this point in the punishment hearing, the jury was still present. Mid-way through this stage of trial, appellant changed his election and requested that punishment be assessed by the court. With the State's agreement, this request was granted, and the jury was dismissed.

with regards to the offense of, at the very least it appears, theft from a corpse; and the Court will allow that under 801(e)(2)(E).

TEX.R.CRIM. EVID. 801(e)(2)(E) provides:

**Statements which are not hearsay.** A statement is not hearsay if: (2) The statement is offered against a party and is (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

Appellant argues that the trial court's ruling was erroneous because there was no independent evidence of a conspiracy or agreement between Walker and appellant, and the statement was not made during the course of a conspiracy because it was made after Gilliard had been shot.

■■■ Contrary to appellant's contentions that the conspiracy must be established by independent evidence, the law provides that hearsay statements, including those whose inadmissibility is at issue, may be considered by the trial judge in determining whether evidence is admissible under the coconspirator rule. *Wilkerson v. State,* 933 S.W.2d 276, 280 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd), *citing Bourjaily v. United States,* 483 U.S. 171, 180, 107 S.Ct. 2775, 2780–81, 97 L.Ed.2d 144 (1987). The existence of a disputed conspiracy must be proved by a preponderance of the evidence. *Wilkerson,* 933 S.W.2d at 279.

■■■ Appellant cites *Sherwood v. State,* 732 S.W.2d 787, 796 (Tex.App.—Fort Worth 1987, no pet.), for the proposition that coconspirators' statements, *i.e.,* the very statements whose admissibility is at issue, cannot be used to determine that the defendant was a conspirator. The *Sherwood* opinion relies on *Denney v. State,* 558 S.W.2d 467, 469 (Tex.Crim.App.1977). The trials in *Sherwood* and *Denney* were held before the Texas Rules of Criminal Evidence took effect on September 1, 1986. Moreover, *Sherwood* did not cite *Bourjaily,* which interpreted the identical rule 801(d)(2)(E) of the Federal Rules of Evidence and held opposite of *Sherwood* and *Denney.* *Bourjaily,* 483 U.S. at 177, 107 S.Ct. at 2780–81. This is not surprising because *Bourjaily* was decided only 15 days before *Sherwood,* and *Bourjaily* itself overruled two United States Supreme Court decisions that preceded the Federal Rules of Evidence. *Bourjaily,* 483 U.S. at 177–78, 107 S.Ct. at 2780. We are to be guided by cases interpreting the Federal Rules of Evidence when the federal rule resembles the Texas rule. *Cole v. State,* 839 S.W.2d 798, 801 (Tex.Crim.App.1990). Because rule 801(d)(2)(E) of the Federal Rules of Evidence is identical to rule 801(e)(2)(E) of the Texas Rules of Criminal Evidence, we are guided by *Bourjaily.* We therefore decline to follow the pre-rule authority of *Denney* and *Sherwood.* We hold instead that Walker's directive to appellant to remove Gilliard's valuables was properly considered to determine whether a conspiracy existed.

The trial judge also heard evidence from Brown, who was not a coconspirator, that appellant and Walker had been at Brown's residence earlier in the day when Gilliard was present, affording them an opportunity to observe his jewelry. They left together and returned together. Walker committed an unprovoked and seemingly motiveless murder, except for appellant's role in it, that is, the theft. In addition, appellant was neither surprised nor disturbed by the murder; he continued his lunch. Appellant followed Walker's instruction without protest. This was evidence, not from a coconspirator, showing that a conspiracy existed between appellant and Walker.

Appellant finally argues that Walker's statement was not made "during the course and in furtherance of the conspiracy" because Gilliard had already been shot. However, the evidence clearly showed that the statement was made in furtherance of a conspiracy to both kill and rob Gilliard.

The trial court did not err in finding Walker's statement admissible as non-hearsay under the coconspirator rule.

**b. Murder of Larkin**

■■■ Also during the punishment hearing, Milton Egby testified concerning the murder of Jeffery Larkin by Jimmy Walker. Appellant arrived at Egby's residence with Walker and asked Larkin for his pistol. When Lar-

kin refused, appellant said "What you mean?" Walker said, "What? What, mother f____? You're not gonna let us use it?" and pulled out his Uzi. Walker shot Larkin, killing him, and instructed appellant to get Larkin's pistol. Appellant calmly searched Larkin's pockets, retrieved the pistol, and left with Walker.

Appellant's hearsay objection to Walker's instruction to appellant to get Larkin's pistol was properly overruled, under TEX.R.CRIM. EVID. 801(e)(2)(E). Appellant makes the same arguments concerning this statement that he made regarding Walker's instruction to get Gilliard's valuables.

We hold that the trial judge properly overruled the hearsay objection to this statement also, following our opinion in *Wilkerson*, 933 S.W.2d at 279–280. From the facts of Larkin's murder, a rational finder of fact could have found by a preponderance of the evidence that Walker's statement to appellant was made by a coconspirator during the course and in furtherance of a conspiracy.

We overrule the fourth and fifth points of error.

### Admission of Evidence of Gang Membership

 The State presented evidence during the punishment hearing that appellant and Walker were members of a gang. Appellant argues that there was no proper predicate for the admission of the evidence.

Brown testified that appellant and Walker were members of a gang. A hearing was conducted during which Brown testified that appellant was a member of the Five Deuce Hoover Crips gang, which engaged in robberies, murder, and "whatever it takes."

Proof of a group's violent and illegal activities and the defendant's membership in the organization is sufficient to prove the relevance of gang membership. *Mason v. State*, 905 S.W.2d 570, 577 (Tex.Crim.App. 1995). Moreover, given that evidence was admitted of appellant's participation in one murder and two capital murders, testimony that he was a member of a gang did not affect a substantial right of appellant, even if its admission had been improper. TEX.

R.APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266 (Tex.Crim.App.1997) (*citing with approval Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). The evidence of gang membership was greatly overshadowed by details of the murders of Gooden, Gilliard, and Larkin. Probably for that reason, the prosecutor did not mention the gang membership evidence in arguing the punishment issue to the judge.

The sixth point of error is overruled.

We affirm the judgment.