**Lance Gerard BIAGAS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–03–00628–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 3, 2005.

Discretionary Review Refused Sept. 28, 2005.

Brian W. Wice, Houston, TX, for Appellant.

Donald W. Rogers Jr., Assistant District Attorney, Charles A. Rosenthal, Jr., District Attorney–Harris County, Houston, TX, for Appellee.

Panel consists of Justices TAFT, JENNINGS, and BLAND.

## OPINION

JANE BLAND, Justice.

A jury found Lance Gerard Biagas guilty of the felony offense of theft of property, aggregated at a total value of over $1,500.00 and under $20,000.00, as charged in the indictment. The trial court assessed punishment at two years' confinement, suspended the sentence and placed Biagas on community supervision, and

fined him $500.00. In this appeal, Biagas contends: (1) the evidence is legally insufficient to support the jury's verdict; (2) the trial court erred in refusing to permit him to replace a biased juror; (3) he received ineffective assistance of counsel; (4) the trial court erred in admitting the trial prosecutor's affidavit at a hearing on a motion for new trial; (5) the trial court erred in excluding certain testimony essential to his defense; and (6) the trial court erred in overruling his motion for a mistrial after the prosecutor's improper jury argument.

### Facts

Angela Holden, Biagas's mother, formerly served as Chief Clerk in the office of Harris County Precinct 7 Constable Perry Wooten. During her employment, Harris County contracted with A–Temps Corporation to provide temporary workers to staff various Harris County departments, including the constable's office. Holden, as a supervisor in the constable's office, approved the temporary employees' time sheets on behalf of Harris County. Based on the workers' representations on the time sheets, and a Harris County supervisor's signature, the county remitted funds to A–Temps to pay the temporary workers upon receipt of an invoice. Harris County also paid A–Temps a commission of 15–18% of the total funds paid.

Holden assigned several of her relatives, including her son Biagas, to work at the constable's office as employees of A–Temps. The relatives, including Biagas, submitted falsified time sheets for hours they never worked, which Holden approved as a Harris County supervisor. She then submitted the time sheets to A–Temps. A–Temps forwarded an invoice together with the false time sheets to the Harris County accounts payable department. Harris County remitted funds to A–Temps for the time reflected on the time sheets, and a commission, as directed by the Harris County auditor's office. Biagas received A–Temps checks payable to him in the amount of $8,662.68 for time he had never worked. Biagas either cashed and spent the checks or he deposited them in Holden's account at the Harris County Federal Credit Union.

### Legal Sufficiency of the Evidence

 In determining the legal sufficiency of the evidence, we review the evidence in a light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the criminal offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Escamilla v. State,* 143 S.W.3d 814, 817 (Tex.Crim.App.2004). Although our analysis considers all evidence presented at trial, we may not reweigh the evidence or substitute our judgment for that of the fact finder. *King v. State,* 29 S.W.3d 556, 562 (Tex.Crim.App. 2000).

Biagas contends that the evidence is legally insufficient to support the jury's verdict because the State failed to prove an essential element of felony theft—ownership. To prove felony theft, the State must prove that a person unlawfully appropriated property with intent to deprive the owner of the property. Tex. Pen.Code Ann. § 31.03(a) (Vernon 2003). Here, the indictment alleged that Steve Garner, in his capacity as chief assistant auditor for Harris County, was the owner of the funds. Biagas asserts that Garner and Harris County were not the "owners" of the money at the time he misappropriated it, and that the county did not have any right, title, or interest in the funds he received from A–Temps.

The State responds that Steve Garner and the county possessed the funds at the time Biagas misappropriated them. The State concedes that although A–Temps "may have been in possession of the funds after they were appropriated, the corporation had no right to possession of the funds whatsoever because of appellant's fraud and therefore did not have and could not have a greater right to possession of same than Harris County."

The Texas Penal Code defines an owner as a person who "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." TEX. PEN. CODE ANN. § 1.07(a)(35)(A) (Vernon 2003). Section 1.07(a)(39) defines possession as "actual care, custody, control, or management." TEX. PEN.CODE ANN. § 1.07(a)(39) (Vernon 2003). Here, it is undisputed that A–Temps was an independent contractor hired by Harris County to provide temporary employees to the constable's office. A–Temps employed Biagas, who falsified the time sheets for work he did not perform at the constable's office. Based upon the verified (but false) time sheets, A–Temps paid Biagas, and submitted invoices, with the time sheets for supporting documentation, to Harris County for reimbursement. At trial, Garner conceded that the county did not have authority or control over A–Temps funds. Harris County personnel, however, supervised Biagas and approved his payment claims based on time sheets Biagas falsified and submitted to the county. By falsifying the time records, Biagas caused the county to release its money to a conduit corporation from which he ultimately took possession of the funds. Thus, Harris County released funds in its possession based upon Biagas's misrepresentation.

Biagas relies on *Bailey v. State,* 87 S.W.3d 122 (Tex.Crim.App.2002), for his contention that Harris County is not an owner of the funds. In *Bailey,* the City of Houston entered into a contract with C & C Services to provide flagmen. *Id.* at 125. The flagmen allegedly submitted false time sheets to the City of Houston. *Id.* C & C Services paid the defendants based on their daily time sheets. *Id.* The City of Houston later reimbursed C & C Services. *Id.* The trial court granted the defendants' motions for directed verdicts because the State had alleged the City as the owner of the funds, as opposed to the owner of C & C Services. *Id.* The issue on appeal in *Bailey,* however, was whether the State could re-indict the defendants on behalf of another owner. *Id.* The facts in *Bailey* are distinguishable from this case. In *Bailey,* an attorney for the City testified during the bench trial that she was not aware of any conditions in the contracts that would require the city to monitor checks written by the independent contractor to the workers and the opinion does not indicate that the defendants ever misrepresented their work directly to the City. *Id.* Here, the record shows that Harris County required Biagas and a Harris County supervisor to verify his work before it would release funds to A–Temps. Thus, Harris County actually approved the time sheets before A–Temps received payment and issued a check to Biagas. Such evidence shows that Harris County maintained control over the funds, and absent Biagas's misrepresentations, would not have released the funds.

Biagas also relies on *United States v. Howard,* 787 F.Supp. 769, 771 (S.D.Ohio, 1992) for the proposition that Garner was not the proper owner of the stolen funds. The *Howard* court observed that if "the government no longer has supervision or control over funds or the ultimate use of the funds, and no longer has any pecuniary interest in the funds, it would grossly distort the English language to call those

funds money ... of the United States." *Id.* In *Howard,* the court held that the evidence was insufficient to prove that the federal government was the owner of social security benefits that had been properly deposited into a personal banking account. *Id.* The court noted that the deposits were made correctly, because the recipient was entitled to the monthly payments and had not defrauded the government. Rather, the defendant had defrauded the social security recipient. *Id.* In this case, however, Biagas wrongfully submitted false time sheets to both A–Temps and Harris County, causing Harris County to release the funds.

Biagas correctly observes in his brief that in *Freeman v. State,* 707 S.W.2d 597, 603 (Tex.Crim.App.1986), the Court of Criminal Appeals stated that "the key to answering the question of which person has the greater right to possession of the property is who, *at the time of commission of the offense,* had the greater right to possession of the property." The record here shows that Biagas committed the offense when he forged time sheets and sought and obtained Harris County approval for compensation to him. *See Salazar v. State,* 711 S.W.2d 720, 723 (Tex. App.-Corpus Christi 1986, pet. ref'd) (holding fact that defendant's conduct caused owner to part with merchandise was sufficient to show that defendant "exercised control" over same irrespective of fact that nothing showed defendant actually received merchandise); *see also Freeman,* 707 S.W.2d at 605 (stating that implicit in meaning of word "appropriation," when it comes to competing and equal possessory interests in property, is that accused must have exercised "unauthorized" control over property).

Harris County retained control and supervision over the funds absent Biagas's false time sheets, which he submitted to Harris County for approval, and thus we hold that the evidence is legally sufficient to support the jury's finding that Harris County, and Garner as its representative, was an owner of the funds for the purposes alleged in the indictment. We therefore overrule Biagas's first issue.

### Replacing a Biased Juror

In his second issue, Biagas contends that the trial court erred in refusing to permit him to replace a biased juror because his counsel believed that he had made an agreement with the prosecutor to excuse the juror. During the voir dire examination, Biagas's counsel asked Juror # 38, a Harris County Sheriff's Deputy, whether he believed that all law enforcement officers tell the truth at all times. The juror answered affirmatively.

Biagas's trial counsel never challenged Juror # 38 for cause, either during or after the voir dire examination. Subsequently, both lawyers for the State and Biagas announced their agreed strikes to the judge on the record. Their discussion did not include Juror # 38. After the clerk empaneled the jury, Biagas's attorney objected to the jury as empaneled because it included Juror # 38, and moved for a mistrial. He stated that he believed that Juror # 38 had been stricken for cause. The trial judge denied the motion.

Biagas contends that the trial court's refusal to remove a biased juror is an error of constitutional dimension that warrants the reversal of his conviction. In his brief, Biagas cites to *Hughes v. United States,* 258 F.3d 453, 463 (6th Cir.2001) for the contention that the "impaneling of a biased juror warrants a new trial." The State, on the other hand, maintains that the trial court did not abuse its discretion in denying Biagas's request for a mistrial, because a mistrial was not warranted, and Biagas's counsel asked for no other re-

lief—not to grant the challenge, or to re-seat a different juror. He also did not request an additional peremptory strike.

■ We review the trial court's ruling under an abuse of discretion standard. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim.App.1999). We agree that the trial court did not abuse its discretion in deny-ing Biagas's motion for a mistrial. The record demonstrates that the jury had not been sworn, the panel from which the jury was selected was present, and the trial could have acted within its discretion in considering or granting a challenge for cause, or its equivalent, had such lesser relief been requested. *See Bauder v. State*, 921 S.W.2d 696, 698 (Tex.Crim.App. 1996) (observing that mistrials are extreme remedy and should not be granted if less drastic relief is available).

As Biagas acknowledges in his brief, it is the responsibility of the parties to assure that the empaneled jury does not include a struck juror. *Truong v. State*, 782 S.W.2d 904, 905 (Tex.App.-Houston [14th Dist.] 1989, pet. ref'd). Biagas relies on both *Truong* and *Pogue v. State*, 553 S.W.2d 368, 370–71 (Tex.Crim.App.1977), in sup-port of his position that the trial court should have replaced Juror # 38. In *Po-gue,* however, the Texas Court of Criminal Appeals held that the trial court erred in not allowing the defendant to use a per-emptory challenge on a prospective juror before the jury was sworn. 553 S.W.2d at 370–71; *see also Truong,* 782 S.W.2d at 905 (concluding trial court erred in deny-ing defendant peremptory challenges allot-ted to him by statute). Here, however, trial counsel moved for a mistrial, and did not seek additional peremptory challenges to remove Juror # 38.

Biagas further contends that Juror # 38s responses indicate he was subject to a challenge for cause pursuant to article 35.16(c)(2), because he has a bias or preju-dice. *See* TEX.CODE CRIM. PROC. ANN. art. 35.16(c)(2) (Vernon 1989 & Supp.2004–2005). He relies on *Brown v. State,* 925 S.W.2d 1, 5–6 (Tex.App.-Tyler 1994), *rev'd,* 913 S.W.2d 577, 580 (Tex.Crim.App.1996), in which the court held that the trial court erred in refusing to grant a challenge for cause to a juror who was unable to follow court's instructions regarding the defen-dant's failure to testify. However, the Texas Court of Criminal Appeals reversed the judgment and held that appellate courts were bound to defer to a trial court's ruling in refusing to grant a chal-lenge for cause of a venireperson who vac-illated between stating that she would be able to follow the law and stating that she did not know for sure whether she could follow the law. 913 S.W.2d 577, 580 (Tex. Crim.App.1996). If a prospective juror states unequivocally that he would always believe a police officer in every case over an ordinary citizen, then that could be bias as a matter of law. *See Hernandez v. State,* 563 S.W.2d 947, 950 (Tex.Crim.App. 1978). Here, however, the failure of de-fense counsel to raise a challenge for cause deprived the trial court of the ability to assess whether Juror # 38 was unequivo-cally biased. *See, e.g., Smith v. State,* 907 S.W.2d 522, 531 (Tex.Crim.App.1995) (holding juror not disqualified as matter of law, despite his statement that he might believe law enforcement officers over oth-ers because he also stated he would listen to both sides and make his decision based on facts and circumstances presented). We therefore hold that the trial court did not abuse its discretion in denying the motion for mistrial and overrule Biagas's second issue.

### Ineffective Assistance of Counsel

■ In his third issue, Biagas contends that his trial attorney failed to render ef-fective assistance of counsel. Biagas con-

tends that his trial counsel was ineffective because he failed to take steps to ensure that Juror # 38 did not sit on the jury. To prevail on a claim of ineffective assistance of counsel, the defendant must show (1) his counsel's performance was deficient; and (2) a reasonable probability exists that the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

The first prong of *Strickland* requires the defendant to show that counsel's performance fell below an objective standard of reasonableness. *Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App. 1999). Thus, the defendant must prove by a preponderance of the evidence that his counsel's representation objectively fell below professional standards. *Mitchell v. State,* 68 S.W.3d 640, 642 (Tex.Crim.App. 2002).

The second prong requires the defendant to show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *see also Thompson,* 9 S.W.3d at 812. The Court of Criminal Appeals has observed that the "purpose of this two-pronged test is to judge whether counsel's conduct so compromised the proper functioning of the adversarial process that the trial cannot be said to have produced a reliable result." *Mallett v. State,* 65 S.W.3d 59, 63 (Tex. Crim.App.2001); *see also Thompson,* 9 S.W.3d at 812–13 (*citing McFarland v. State,* 845 S.W.2d 824, 843 (Tex.Crim.App. 1992)). A reviewing court must indulge a strong presumption, however, "that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. Any allegation of ineffectiveness must be firmly founded in the record, and the record affirmatively must demonstrate the alleged ineffectiveness. *Thompson,* 9 S.W.3d at 813 (citing *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996)). Failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Thompson,* 9 S.W.3d at 813.

Biagas presented his ineffective assistance claim to the trial court in a motion for new trial. The trial court overruled Biagas's complaint by denying his motion for new trial. We therefore analyze his ineffective assistance of counsel issue as a challenge to the denial of his motion for new trial. *See Charles v. State,* 146 S.W.3d 204, 208 (Tex.Crim.App.2004) (holding appropriate standard of review for ineffective assistance claim brought forth in motion for new trial is abuse of discretion); *see also Schoenbauer v. State,* 85 S.W.3d 400, 402 (Tex.App.-Tyler 2002, no pet.) In such circumstances, we review the *Strickland* test through an abuse of discretion standard. *Charles,* 146 S.W.3d at 208. Thus, we reverse only if the trial court's decision is arbitrary or unreasonable, viewing the evidence in the light most favorable to the ruling. *Id.*

At the outset, we note that Biagas's trial counsel submitted an affidavit at the hearing on Biagas's motion for a new trial. In it, trial counsel avers that his failure to challenge Juror # 38 for cause was not part of his trial strategy, but instead was an oversight on his part. Biagas thus has rebutted the presumption that his trial counsel's inaction was a reasonable trial strategy.

Biagas contends that the affidavit by his trial counsel cannot be contradicted by the

State and thus the trial court had no option but to grant his motion for new trial. In *Charles*, the Texas Court of Criminal Appeals squarely rejected such an analysis. 146 S.W.3d at 213. The defendant in *Charles* moved for a new trial based upon ineffective assistance of counsel grounds. *Id.* at 207. He offered affidavits that averred that trial counsel had not conducted any independent investigation into the voluntariness of the defendant's confession. The State offered *no contrary affidavit*, and thus the defendant contended that the facts were uncontradicted and required a new trial. *Id.* at 207–08.

The Court of Criminal Appeals disagreed. The court first noted that ambiguous and conclusory statements are an inherent problem associated with affidavit evidence—such evidence does not allow the witness to clear up ambiguities, nor for an examination into the factual basis of a conclusion. *Id.* at 209–10. Next, the court held that a court of appeals should presume that all reasonable implied findings that could be made against the losing party were, indeed, made by the trial court. *Id.* at 208, 211. Finally, the Court of Criminal Appeals held that a trial judge need not believe the statements made in an affidavit—rather, the trial court may believe "all, some, or none of the affidavit, even though it may be difficult (if not impossible) to assess an affidavit's credibility." *Id.* at 213.

Applying the analysis in *Charles* to this case, we hold that the trial court did not abuse its discretion in denying Biagas's motion for new trial based upon ineffective assistance of counsel. In his affidavit, trial counsel states that he "felt that [Juror # 38] was a biased juror subject to my challenge for cause." He further states that he "mistakenly believed that Juror # 38 was among those jurors whom both sides had agreed to excuse by agreement

and did not object when the trial judge called out the numbers of those jurors who were either being challenge [sic] for cause or who were being excused by agreement." The affidavit concludes: "My failure to ensure that [Juror # 38] did not serve on this jury given his bias by taking action at a time when the judge could have corrected my oversight was not the result of any reasoned trial strategy. I simply made a mistake."

The State offered the trial prosecutor's affidavit, in which she averred that both sides agreed to strike six jurors, not including Juror # 38. In addition, the record reflects that the trial court struck four other jurors for cause and denied two challenges for cause. Defense counsel's strike list does not reflect either a strike for cause, nor a peremptory challenge to Juror # 38.

As the Court of Criminal Appeals held in *Charles*:

> Statements in affidavits of interested witnesses concerning their own state of mind are "uncontrovertible" because the "mental workings of an individual's mind are matters about which adversaries have no knowledge or ready means of confirming or controverting." A trial judge has discretion to discount factual assertions in an affidavit by an interested party that do not meet this test. And an appellate court, in its review, must defer to the trial court's ruling to the extent that any reasonable view of the record evidence will support that ruling.

146 S.W.3d at 210 (citations omitted).

Jury selection, in particular, involves strategy. This case involves a theft within the constable's office, allegedly organized by a constable's employee. Juror # 38, who was not challenged, is a peace officer. Defense counsel's affidavit concludes that his decision was a mistake, but the trial

judge who oversaw voir dire was in a position to evaluate whether trial counsel's statement was credible. The trial judge could have found otherwise, given the agreement as to six other jurors, as well as the fact that trial counsel did not ask for further examination of the juror, to reseat a different juror, or for an additional peremptory strike—even after he discovered his error. Following *Charles*, we defer to the trial court's ruling. Biagas fails to demonstrate that no reasonable view of the record supports the trial court's ruling, because the trial court could have concluded that trial counsel's affidavit was not credible. *See id.*

 Even if trial counsel had been deficient, Biagas has not shown that a different outcome would have resulted from more effective representation. Biagas claims automatic harm from the presence of a biased juror on the jury, but we cannot reach such a conclusion here, where the juror was not sufficiently questioned to determine whether he absolutely should have been excused for cause, because no challenge was ever made, and counsel never sought to further examine the juror. We therefore hold that the trial court did not abuse its discretion in denying a new trial based upon ineffective assistance of counsel.

### Evidentiary Rulings

*Prosecutor's Affidavit*

 Rule 21.7 allows a trial court to receive evidence by affidavit at a hearing on a motion for new trial. Tex.R.App. P. 21.7. In his fourth, fifth, and sixth issues, Biagas maintains that the trial court erred in admitting the trial prosecutor's affidavit at the new trial hearing. He contends that the affidavit is inadmissible under Texas Disciplinary Rule of Professional Conduct 3.08 and Texas Rules of Evidence 401 and 403. Tex. Disciplinary R. Prof'l Conduct 3.08(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 1998) (Tex. State Bar R. Art. X, § 9). We review the trial court's admission or exclusion of evidence under an abuse of discretion standard. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997); *see also Goff v. State*, 931 S.W.2d 537, 553 (Tex.Crim. App.1996). A trial court has wide discretion in its decision to admit or exclude evidence. *Guzman*, 955 S.W.2d at 89; *Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim.App.1992). A trial court's evidentiary ruling should not be disturbed on appeal unless it is an abuse of discretion. *Goff*, 931 S.W.2d at 553; *Erdman v. State*, 861 S.W.2d 890, 893 (Tex.Crim.App.1993). If the trial court's ruling is within the reasonable zone of disagreement, then an appellate court should not disturb it. *Pierre v. State*, 2 S.W.3d 439, 442 (Tex. App.-Houston [1st Dist.] 1999, pet. ref'd) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990)).

Disciplinary Rule 3.08(a) provides that a lawyer shall not continue employment as an advocate before a tribunal in an adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyers's client. Tex. Disciplinary R. Prof'l Conduct 3.08(a). The rule provides an exception that allows a lawyer to testify if "the testimony relates to the nature and value of legal services rendered in the case." Tex. Disciplinary R. Prof'l Conduct 3.08(a)(3).

In support of his contention that Rule 3.08 prohibits a prosecutor from introducing her own affidavit into evidence, Biagas maintains that "the core concern is the possible confusion for the trier of fact as to whether statements by an advocate-witness should be taken as evidence or argument." *See Gonzalez v. State*, 117 S.W.3d 831, 840–41 (Tex.Crim.App.2003) (holding

that disqualification of defendant's counsel of choice, based on counsel's possible dual role as both advocate and witness with respect to allegations that defendant attempted to bribe State's key witness, was warranted).

The State responds that: (1) the prosecutor's affidavit fell within an exception to rule 3.08; (2) Biagas's trial counsel also attached an affidavit to his motion for a new trial; and (3) even if the affidavit violates rule 3.08(a), Biagas has not demonstrated that the violation affected his substantial rights or deprived him of a fair trial. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a).

We agree with the State. The exception to Disciplinary Rule 3.08 allows a lawyer to testify if "the testimony relates to the nature and value of legal services rendered in the case." TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a)(3). The prosecutor presented her affidavit to the judge at a hearing on the defense's motion for new trial—a hearing at which the effectiveness of defense counsel was an issue. Unlike *Gonzalez,* the prosecutor's affidavit here was offered for the purpose of demonstrating that Biagas's trial counsel was neither deficient nor prejudicial, and did not relate to an issue in the trial. In such an instance, where the affidavit was not presented to the jury, little likelihood of confusion exists. The trial judge has firsthand knowledge of the matter in issue, and thus, is less dependent on the adversary process to test the credibility of the testimony. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08 cmt. 6.

 Next, Biagas contends that the trial court erred in admitting the prosecutor's affidavit over his objection that it is irrelevant under Texas Rules of Evidence 401. Evidence is relevant under Rule 401 if it "influences consequential facts, i.e., facts which have something to do with the

ultimate determination of guilt or innocence in a particular case." *Mayes v. State,* 816 S.W.2d 79, 84 (Tex.Crim.App. 1991).

Biagas did not expressly direct the trial court to the particular statement within the affidavit that he asserts was irrelevant on Rule 401 or Rule 403 grounds. TEX.R. EVID. 401, 403. In the absence of any request to limit the scope of the affidavit, we will uphold the trial court's ruling if any of the material in the affidavit is relevant. TEX.R. EVID. 105(a).

We have reviewed the affidavit, and conclude that, although of limited relevance, it contains statements that the trial judge could properly consider in connection with a motion for new trial. For example, it recounts the prosecutor's recollection regarding voir dire, and refutes defense counsel's assertion that an agreement as to a challenge for cause for Juror # 38 existed between the prosecutor and the defense attorney.

 Finally, Biagas contends that the prosecutor's affidavit is inadmissible under Texas Rule of Evidence 403. Evidence is unfairly prejudicial if it has a "tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *See Montgomery v. State,* 810 S.W.2d 372, 389 (Tex.Crim.App.1990)(citing Advisory Committee's Note to FED.R.EVID. 403). The affidavit contains speculation that the outcome of this trial would not have been different had the trial court removed Juror # 38, because the jury reached a "swift verdict." Where the trial court was the fact finder at the motion for new trial hearing, however, there is less danger that it would be influenced by improper suggestion. *See* TEX.R. EVID. 403 (including "misleading the jury" as special ground for exclusion of relevant evidence). On bal-

ance, we conclude that the trial court did not abuse its discretion in deciding that the probative value of the affidavit was not "substantially outweighed" by the danger of unfair prejudice. *See* Tex.R. Evid. 403.

### Excluded Hearsay Testimony

██ In his seventh issue, Biagas contends that the trial court erred in excluding the testimony of Dan McAnulty, an investigator with the Harris County District Attorney's office. During cross-examination of McAnulty, Biagas attempted to elicit a statement that his mother, Angela Holden, made to McAnulty. The record demonstrates the following exchange:

> DEFENSE COUNSEL: Now, you had several conversations with Angela Holden, Ms. Holden, during this matter, didn't you?
>
> MCANULTY: Yes, I did.
>
> DEFENSE COUNSEL: Okay. And she told you that Lance Biagas didn't know anything about what was going on, did she?

Biagas contends that Holden's out-of court statement made to McAnulty is a statement against her penal interest, which is an exception to the hearsay rule, and therefore, the trial court should have admitted it. *See* Tex.R. Evid. 803(24).

██ Rule 803(24) defines a statement against interest as one which, at the time of its making, so far tended to subject the declarant to criminal liability, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. Tex.R. Evid. 803(24). In criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. *Id.* The rule does not limit the exception to cases in which the defendant is the declarant.

*Bingham v. State,* 987 S.W.2d 54, 56 (Tex. Crim.App.1999). In our review of the admissibility of Holden's statement, we determine: (1) whether it tended to expose her to criminal liability; and (2) whether there were any corroborating circumstances that clearly indicated its trustworthiness. *Davis v. State,* 872 S.W.2d 743, 747–48 (Tex.Crim.App.1994).

The State responds that, without more in the record, it is impossible to determine whether the purported statements of Holden to McAnulty were actually against her penal interest within the meaning of Rule 803(24). Biagas's trial counsel did not make an offer of proof or present a bill of exceptions to the trial court showing McAnulty's answer to the question propounded. Furthermore, the State points out that nothing in the record corroborates Holden's purported statements.

██ Texas Rule of Evidence 103(a)(2) requires an offer of proof of the proposed evidence to the trial court, unless the substance is apparent from the context, if the ruling of the trial court excludes the evidence. *Guidry v. State,* 9 S.W.3d 133, 153 (Tex.Crim.App.1999); *Gutierrez v. State,* 764 S.W.2d 796, 798 (Tex.Crim.App.1989); *Howard v. State,* 962 S.W.2d 119, 122 (Tex. App.-Houston [1st Dist.] 1997, pet. ref'd). An offer of proof must show that the excluded evidence is relevant and admissible. *See Warner v. State,* 969 S.W.2d 1, 2 (Tex. Crim.App.1998).

We hold that Biagas failed to show the trial court that Holden's statement was against her penal interest within the meaning of Rule 803(24). Tex.R. Evid. 803(24). Additionally, no evidence corroborates the trustworthiness of her purported statements. We conclude that Biagas failed to show that the trial court abused its discretion in refusing to admit the hearsay evidence.

*Excluded Character Evidence*

■ In his eighth issue, Biagas alleges that the trial court erred in refusing to admit character evidence supporting his reputation for honesty and trustworthiness. During his defense, Biagas attempted to elicit testimony from his former employer, Charles Johnson. After the trial court sustained the State's relevancy objection, Johnson testified outside the presence of the jury that Biagas was a reliable employee who handled large sums of money, and had never stolen anything from him. Johnson also testified that he was of the opinion Biagas was not the kind of person who would steal, and based on his experience in working with Biagas, he was of the opinion that Biagas was honest and trustworthy.

Biagas asserts that the testimony of Johnson is admissible under Texas Rule of Evidence 404(a)(1)(A). We agree that Rule 404(a)(1)(A) allows a criminal defendant to offer evidence of a pertinent character trait. TEX.R. EVID. 404(a)(1)(A). The indictment alleges Biagas committed an offense involving moral turpitude, thereby placing his reputation and character for honesty in issue. *See Canto–Deport v. State,* 751 S.W.2d 698, 700 (Tex. App.-Houston [1st Dist.] 1988, pet. ref'd) (finding trial court erred, in trial for fraudulent removal of a writing, in refusing to admit evidence of defendant's reputation for honesty and fair dealing).

■ The record demonstrates, however, that Biagas failed to sort out the admissible portions of Johnson's testimony from the inadmissible portions. Here, part of Johnson's testimony involved specific instances of conduct, e.g., that Biagas had never stolen from him at work. Direct testimony regarding specific instances of conduct is not admissible under Texas Rules of Evidence 404(a)(1)(A) or 405(b), because a person's character trait is not an essential element of a theft charge. *See Valdez v. State,* 2 S.W.3d 518, 519–20 (Tex. App.-Houston [14th Dist.] 1999, pet. ref'd) (providing that if evidence of accused's character or character trait is admissible, proof may be made through reputation or opinion testimony, but specific instances of conduct are inadmissible to show inference that accused did or did not commit offense). If a judge is presented with a proffer of evidence containing both admissible and inadmissible evidence and the proponent fails to segregate and specifically offer the admissible evidence, the trial judge may properly exclude all the evidence. *Willover v. State,* 70 S.W.3d 841, 847 (Tex.Crim.App.2002). We therefore hold that the trial judge did not abuse its discretion in refusing to admit the evidence.

**Improper Jury Argument**

■ In his final issue on appeal, Biagas maintains that "the trial court erred in not overruling appellant's objection after the prosecutor improperly referred to appellant's failure to testify during final argument in the guilt-innocence stage of trial." The record reflects the following exchange:

DEFENSE COUNSEL: ... [Appellant] didn't know what was going on. He didn't have a clue.

Should he be found guilty of a felony because he was doing what he was told to do? He didn't know about this elaborate scheme of overtime sheets with Harris County.

PROSECUTOR: Your Honor, I'm going to object to the defendant has not testified of him going into what the defendant knew or did not know [sic].

DEFENSE COUNSEL: Your Honor, I'm going to object to that as—

PROSECUTOR: It's outside the record is my objection.

DEFENSE COUNSEL: Your Honor, I object to that as a comment on the defendant not testifying; and I move for a mistrial.

THE COURT: That will be overruled.

 We review the trial court's ruling on Biagas's motion for mistrial under an abuse of discretion standard of review. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim.App.2004); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex.Crim.App.1999). We uphold the trial court's ruling if that ruling was within the zone of reasonable disagreement. *Wead*, 129 S.W.3d at 129; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim.App.1990). In addition, an appellate court must review the trial court's ruling in light of the arguments that were before the court at the time it ruled. *See* Tex. R.App. P. 33.1; *Wead*, 129 S.W.3d at 129; *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim.App.2003).

 Biagas correctly states that the prosecutor may not use final argument at either stage of the trial to comment on a defendant's failure to testify. *See Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim.App.2001). The law is well settled that a prosecutor's comment to the jury on an accused's failure to testify violates the state and federal constitutional privileges against self-incrimination. *Bird v. State*, 527 S.W.2d 891, 893–94 (Tex.Crim.App. 1975). The failure of a defendant to testify shall not be alluded to or commented on by counsel. *See* Tex.Code Crim. Proc. Ann. art. 38.08 (Vernon 1979).

Biagas argues that the prosecutor's objection "amounted to a direct comment on Appellant's failure to testify." He also cites to several cases for the proposition that improper prosecutorial remarks warrant reversal. *See, e.g., Haddad v. State*, 860 S.W.2d 947, 954–55 (Tex.App.-Dallas 1993, pet. ref'd)(holding that defendant was entitled to mistrial due to prosecutor's

comment on organized crime during voir dire and continued indirect references to organized crime throughout trial); *Godfrey v. State*, 859 S.W.2d 583, 584 (Tex. App.-Houston [14th Dist.] 1993, no pet.) (holding defendant did not receive fair trial due to prosecutor's misstatement during voir dire of the law regarding his right not to testify). The State, on the other hand, responds that the comment by the prosecutor was not a direct comment on Biagas's failure to testify.

Although the prosecutor's remark was improper, the remark does not demonstrate any willful or calculated effort on the part of the State to deprive Biagas of a fair and impartial trial. Biagas moved for a mistrial, as opposed to seeking a limiting instruction. Any harm from the prosecutor's remark could have been cured by a prompt instruction to the jury to disregard the comment. *See Moore v. State*, 999 S.W.2d 385, 405–06 (Tex.Crim.App.1999) (holding harm from comment upon defendant's failure to testify cured by instruction to disregard). Moreover, the jury charge instructed the jury not to consider the defendant's failure to testify, and thus nothing in the record indicates that the trial judge would not have heeded a proper request to instruct the jury to disregard the comment. The denial of a mistrial is not improper if a lesser remedy would have cured any harm and was not requested. *Young v. State*, 137 S.W.3d 65, 70–72 (Tex.Crim.App.2004). We therefore hold that the trial court did not abuse its discretion in denying Biagas's motion for a mistrial.

## Conclusion

After reviewing the record, we conclude that (1) the evidence is legally sufficient to support the jury's verdict; (2) the trial court did not abuse its discretion in refusing to permit Biagas to replace Juror # 38;

(3) the trial court did not err in denying Biagas's motion for new trial on the ground that he received ineffective assistance of counsel at trial; (4) the trial court did not err in admitting the trial prosecutor's affidavit at a hearing on the motion for new trial; (5) the trial court did not err in excluding the hearsay testimony of Angela Holden, or the character evidence of Charles Johnson; and (6) the trial court did not err in overruling Biagas's motion for a mistrial after the prosecutor's comment on Biagas's failure to testify.

We therefore affirm the judgment of the trial court.