Opinion issued August 4, 2016



In The

# Court of Appeals

For The

## First District of Texas

_____

## NO. 01-14-01006-CR

_____

**CHARLES RAY CARTER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 337th District Court
Harris County, Texas
Trial Court Case No. 1399940

**DISSENTING OPINION**

In this murder case in which self-defense was the critical issue, the majority

erroneously concludes that the strategy of the trial counsel of appellant, Charles Ray

Carter, to not introduce evidence that the complainant, Earl Green, had a significant

amount of gunshot residue on his dominant left hand at the time appellant shot him was not "objectively unreasonable." From this conclusion, it erroneously holds that appellant was not deprived of effective assistance of counsel at trial. Accordingly, I respectfully dissent.

In his sole issue, appellant argues, in part, that the trial court erred in denying his motion for new trial because "[n]o conceivable strategy could have justified keeping . . . from the jury" evidence that the complainant had a significant amount of gunshot residue on his "dominant [left] hand" at the time that appellant shot him. He asserts that his "acquittal turned on whether he reasonably believed his life was in real or apparent danger" from the complainant when the complainant, driving his Jeep, "came speeding down the street, pulling over to the wrong side of the street" so that the driver's window of the Jeep and the driver's window of appellant's car, in which he was sitting, "were facing one another." Appellant emphasizes the obvious: "Whether [the complainant] had fired—or even pointed—a weapon at [him] was a critical issue to the defense, particularly since no weapon was found in [the complainant's] Jeep."

To prove a claim of ineffective assistance of counsel, appellant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

2

*Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Appellant has the burden of establishing both *Strickland* prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).

Because appellant presented his ineffective-assistance claim to the trial court in a motion for new trial and received a hearing on his motion, we analyze his issue under an abuse-of-discretion standard as a challenge to the denial of his motion. *Biagas v. State*, 177 S.W.3d 161, 170 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). We view the evidence in the light most favorable to the trial court's ruling and uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). We do not substitute our judgment for that of the trial court, but rather decide whether the trial court's decision was arbitrary or unreasonable. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); *Biagas*, 177 S.W.3d at 170. A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Webb*, 232 S.W.3d at 112.

At the new-trial hearing, appellant introduced into evidence the following excerpt from the gunshot residue report by analyst Jason Schroeder related to the complainant's hands:

A summary of confirmed detected particles is as follows:

| Item | Pb-Ba-Sb | Ba-Sb | Pb-Sb | Pb-Ba | Pb | Ba | Sb |
|---|---|---|---|---|---|---|---|
| Item #G7. Right Hand | 4 | 0 | 0 | 0 | 2 | 0 | 0 |
| Item #G7. Left Hand | 21 | 0 | 0 | 3 | 5 | 0 | 0 |

**Summary of results and interpretations**

Item #G7 samples labeled Right Hand and Left Hand had particles confirmed as having a composition characteristic of GSR (Pb-Ba-Sb) which likely resulted from activities such as firing a weapon, being in close proximity to a firearm during discharge, or handling a firearm, a fired cartridge, or some other surface bearing GSR.

Appellant also introduced into evidence the affidavits of Brian Carter, his brother, Aaron Jones, and Jennifer Dangerfield. In his affidavit, Brian Carter testified that after the shooting, he saw someone run to the complainant's Jeep, appear to take something out of the Jeep, and run behind a "club." Jones testified that he saw Braelon Green, the complainant's nephew, approach the Jeep after the shooting, look inside, and "r[u]n off." And Dangerfield testified that her sister, Nathanielle Blake, saw the complainant's brother, Barry Green, and the complainant's nephew, Braelon Green, approach the Jeep after the shooting.

Even if the trial court dismissed the testimony of Brian Carter, Jones, and Dangerfield, it was not free to dismiss the uncontroverted evidence regarding the gunshot residue found on the complainant's hands, specifically his dominant left hand. From the evidence of the gunshot residue found on the complainant's hands,

4

especially given the fact that a much greater amount was found on the complainant's dominant left hand, the jury could have reasonably inferred that the complainant, as he caused his Jeep to approach appellant's car at a high speed, fired a shot at appellant when the driver's side window of his Jeep aligned with the driver's side window of appellant's car. Had the jury had before it the gunshot residue evidence from which it could have made this inference, it, if it had made the inference, would have most probably acquitted appellant.

As the majority notes, appellant's trial counsel did testify at the new-trial hearing that he did not introduce evidence that the complainant was found to have gunshot residue on his hands because he believed that, insofar as a firearm was not found in the complainant's car, and others also had gunshot residue on their hands, the gunshot residue found on appellant's hands could have possibly confused the jury. He noted that his "approach at the time was to present a case that showed [the complainant] to be aggressive and [that he] had [taken] aggressive actions toward [appellant]." Specifically, appellant's trial counsel testified as follows:

| [New-Trial Counsel]: | So, your reason for not introducing the gunshot residue or evidence of [the] gunshot residue was because you were hoping that a jury would not even look at the issue of whether or not there was a weapon? |
| --- | --- |
| [Appellant's Trial Counsel]: | In conjunction with the testimony of the medical expert and the forensic expert. |

5

[New-Trial Counsel]: So, you thought -- your thinking was ultimately I'm not going to introduce the gunshot residue evidence because I think the jury may be able to acquit him without there being any evidence of there being a gun?

[Appellant's Trial Counsel]: Correct. And we voir-dired on that issue, we talk[ed] at length about that issue, and that was clearly the approach in trial.

[New-Trial Counsel]: So, the fact that there was gunshot residue evidence, you decided -- you made the decision not to introduce it.

[Appellant's Trial Counsel]: Yes, I did.

In his affidavit, filed in the trial court, appellant's trial counsel further explained:

. . . I believed that introducing evidence of [the gunshot residue] would *unnecessarily confuse the jury without explaining where the gun supposedly fired by the victim had disappeared to*. *The [gunshot residue] on the victim's and witness[es]' hands also contradicted the fact that no gun was recovered from the victim's car*, no shell casings were recovered from the victim's car, and there was no evidence whatsoever of any bullet strikes to [appellant]'s vehicle, despite the fact that the vehicles were at nearly point blank range when [appellant] fired into the victim's car. In trying the case and presenting the case to the jury, I was making the argument based on the reasonableness of the [appellant]'s actions *based on apparent danger and his perceived, reasonable belief that the victim owned a gun and was coming towards him in a threatening and aggressive manner*.

I was aware that the victim owned several firearms and that he frequently carried a pistol in the glove compartment of his vehicle. However, I was also aware that police investigated this issue and determined that all of the victim's firearms were accounted for by his wife and that from the victim's phone and text messages the night of

6

the murder, it did not appear that he had had the opportunity to go to his house to retrieve a firearm between the time of his initial encounter with [appellant] to the time of the murder[.]

(Emphasis added.)

From the evidence, the majority, as noted above, concludes that it "cannot say that defense counsel's strategy was indeed objectively unreasonable." Respectfully, however, the strategy of appellant's trial counsel was objectively unreasonable.

Frankly, the so-called strategy of appellant's trial counsel makes no sense. First, trial counsel's thinking that "ultimately I'm not going to introduce the gunshot residue evidence because I think the jury *may be able to acquit without there being any evidence of there being a gun*," is completely at odds with the fact that the gunshot residue found on the complainant's hands, especially the much greater amount found on his dominant left hand, serves to establish that he not only had a gun on his person at the time he caused his Jeep to approach appellant's car, but that he actually fired the gun. Without this evidence, all the jury had before it to support appellant's claim of self-defense was that the complainant owned guns and caused his Jeep to approach appellant's car.

Second, trial counsel's strategy was at odds with itself. On the one hand, counsel stated, "I believed that introducing evidence of [the gunshot residue] would *unnecessarily confuse the jury without explaining where the gun supposedly fired by the victim had disappeared to*." On the other hand, trial counsel stated, "I was

7

making the argument based on the reasonableness of [appellant]'s actions *based on apparent danger and his perceived, reasonable belief that the victim owned a gun and was coming towards him in a threatening and aggressive manner*." (Emphasis added.) Counsel admits that his strategy was based on the fact that the complainant "owned" guns. Yet he failed to introduce the only available evidence that the complainant actually had a gun on his person and fired it as he approached appellant. In counsel's own words, "*[t]he [gunshot residue] on the victim's and witness[es]' hands [would have] contradicted the fact that no gun was recovered from the victim's car . . . .*" (Emphasis added.)

Even without the evidence from Brian Carter that he saw someone run to the complainant's Jeep after the shooting, appear to take something out, and run behind a "club," the fact that the complainant had gunshot residue, primarily on his dominant left hand, would have actually served to establish that he had a gun on his person at the time of the shooting and fired it. Merely establishing that the complainant owned guns served no such purpose. In other words, rather than confusing the jury about whether the complainant actually had a gun in his Jeep at the time of the shooting, trial counsel affirmatively chose to not present the jury with the gunshot residue evidence—the only evidence that would have supported an inference that the complainant had a gun in his Jeep. His choice left the jury with

no evidence that the complainant had a gun on him at the time of the shooting, and it, in effect, undermined appellant's self-defense claim.

Thus, this "strategy" was objectively unreasonable. *See Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2064; *see also Ex parte Saenz*, No. WR-80,945-01, --- S.W.3d ---, 2016 WL 1359214, at \*8 (Tex. Crim. App. Apr. 6, 2016) (decision counsel defends as "trial strategy" might nonetheless be objectively unreasonable; magic word "strategy" does not insulate decision from judicial scrutiny (internal quotations omitted)). Moreover, trial counsel's deficient performance necessarily prejudiced appellant. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Again, from the evidence of the gunshot residue found on the complainant's hands, especially with the greater amount found on his dominant left hand, the jury could have reasonably inferred that the complainant, as he caused his Jeep to approach appellant's car at a high speed, fired a shot at appellant when the driver's side window of his Jeep aligned with the driver's side window of appellant's car. And had the jury had before it the gunshot residue evidence from which it could have made this inference, it, if it had made the inference, would have most probably acquitted appellant. *See id.*

Accordingly, I would hold that the trial court erred in denying appellant's new-trial motion, reverse the trial court's judgment, and remand the case for a new trial.

Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Lloyd.

Jennings, J., dissenting.

Publish.   TEX. R. APP. P. 47.2(b).