**Edmund Bryan HEIMLICH, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–95–01369–CR.

Court of Appeals of Texas, Houston (14th Dist.).

March 11, 1999.

Patrick McCann, Houston, for appellant.

William J. Delmore, III, Houston, for appellee.

Panel consists of Chief Justice MURPHY and Justices HUDSON and CANNON.*

## MAJORITY OPINION

PAUL C. MURPHY, Chief Justice.

Appellant, Edmund Bryan Heimlich ("Heimlich"), entered a plea of not guilty to the offense of theft of property of the value of more than $750 and less than $20,000.[1] *See* TEX. PENAL CODE ANN. § 31.03 (Vernon 1994 & Supp.1998); Act of June 19, 1983, 68th Leg., R.S., ch. 497, § 3, 1983 Tex. Gen. Laws 2917, 2918–19 (amended 1993) (current version at TEX. PENAL CODE ANN. § 31.03(e) (Vernon Supp.1998)) (setting the dollar amounts for third degree felony theft). He was convicted and the trial court assessed punishment at confinement for four years in the Texas Department of Criminal Justice–Institutional Division.[2] Heimlich raises three points of error to challenge his conviction. We reverse and render a judgment of acquittal.

## I. Background

On August 25, 1993, the complainant received a commission check from the United States Treasury Department for services in selling U.S. Veteran's Administration property. The check, made out for $5050, was necessarily made payable to Heimlich because the complainant, a real estate salesperson, worked in association with Heimlich, a licensed real estate broker. *See* TEX.REV.

---

* Retired Justice Bill Cannon sitting by assignment.

1. Heimlich was also charged with the misapplication of fiduciary property, but he was found not guilty of that offense.

2. Heimlich was subsequently awarded "shock probation." *See* TEX.CODE CRIM. PROC. ANN. art.

42.12, § 6 (Vernon Supp.1998). "Shock probation" is the term used to describe a trial court's action in awarding a convicted defendant probation after the defendant has already spent some time in confinement. *See id.*

CIV. STAT. ANN. art. 6573a (Vernon Supp. 1998).[3]

That same day, the complainant went to Heimlich to have the check endorsed for deposit and to have Heimlich contemporaneously issue a check for the commission amount to him. Although their contract only required Heimlich to pay the commission to the complainant within two days after he collected it,[4] Heimlich immediately issued complainant a check, postdated for August 26, 1993. The complainant took the endorsed U.S. Treasury check to the bank that afternoon in order to deposit the $5050 into Heimlich's corporate bank account.

At 3:30 p.m. on August 26, 1993, Heimlich filed a written order to stop payment on his check to the complainant. His cited reason for requesting such action was that the cover charge owed him by complainant was due.[5] When the complainant appeared at the bank on August 27, 1993, to cash the check from Heimlich, he was told Heimlich had stopped payment on the check. Concerned that he would not receive his commission, the complainant immediately went to the check fraud division of the Harris County District Attorney's office and filed a complaint.

Bank records show the $5050 was placed into Heimlich's corporate bank account on August 26, 1993. Nevertheless, when Heimlich appeared at the bank on August 27, 1993, to gain access to the funds, the bank's branch manager informed him the funds would not be available until August 30, 1993. Actually, the bank had placed a hold on the funds based upon representations made to it by a person from the district attorney's office. On September 1, 1993, a Harris County district judge signed a warrant authorizing the seizure of the disputed funds and they were deposited into the registry of the court.

Heimlich was thereafter charged with theft of property of a value of more than $750 and less than $20,000. The State demonstrated at trial that Heimlich was having difficulty in making the rental fees for his office space. He had apparently represented to the landlord that he had a sum of approximately $5000 owed to him, and that he would use the sum to pay for his arrearages. The jury considered the evidence sufficient to prove he intended to permanently deprive the complainant of the commission and found Heimlich guilty of theft.

Heimlich raises three points of error: (1) the trial court committed error by denying his motion to quash the indictment; (2) the evidence was insufficient to support a verdict of guilt to the offense of theft; (3) the trial court erroneously denied his motion for new trial without holding a hearing. Because we hold that he states a sufficient ground for reversal in his second point of error, we do not address whether the trial court erred in denying his motion to quash or in denying his motion for new trial without a hearing.

3. Under The Real Estate License Act, a real estate agent, or salesperson, may only accept compensation for the sale of real estate from "the broker under whom the salesperson is at the time licensed or under whom the salesperson was licensed when the salesperson earned the right to compensation." TEX.REV.CIV. STAT. ANN. art. 6573a, § 1(d) (Vernon Supp.1998). Heimlich was the complainant's sponsoring broker.

4. The pertinent contract provision specifically stated:

Broker agrees to pay Salesperson, within 2 days of collection by Broker, 100% (one hundred percent) of all commissions received as a result of service performed by Salesperson in the business as a licensed Real Estate Salesperson. Any such commission shall be reduced by a portion thereof distributed to other cooperating Brokers who participated in a sale, lease, or rental and earned a portion of the commission thereon, provided however, Broker shall deduct from said commission an amount equal to any indebtedness owed Broker by Salesperson. Neither party shall be liable to the other for any commission not collected.

5. The broker and salesperson agreement between Heimlich and the complainant provided for the complainant to pay $300 a month as "Broker's Management Charge." The contract also provided Heimlich the right to deduct the upcoming month's charge from commissions owed the complainant:

Broker may deduct any part or all past due charges, late charges, *management fees coming due within the next 10 days,* and expenses due Broker, from commissions payable to Salesperson and/or forfeit all or part of Salesperson's Security Deposit.
(emphasis added).

## II. Discussion

In claiming the evidence was insufficient to support his conviction, Heimlich cites precedent establishing review for factual insufficiency. *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). In making his argument, however, Heimlich asserts the evidence was insufficient, as a matter of law, to establish the necessary elements of theft. This argument is properly categorized under the rubric of "legal insufficiency." *See id.* at 132–34 (describing legal insufficiency as a question of law "compris[ing] the minimum standard for comporting with federal due process"). Therefore, believing Heimlich is asking for a legal sufficiency review, we accordingly address his point of error.

In conducting a legal sufficiency review, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Where the evidence is legally insufficient to sustain a conviction on appeal, we must reverse the conviction and order a judgment of acquittal because the constitutional guarantee against double jeopardy precludes further prosecution of the cause. *See Burkholder v. State*, 660 S.W.2d 540, 542 (Tex.Crim.App.1983) (citing *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)).

The essential elements of Heimlich's conviction for theft are: (1) he unlawfully appropriated property; (2) with intent to deprive the owner of the property; and (3) the value of the property was between $750 and $20,000. *See* TEX. PENAL CODE ANN. § 31.03(a); Act of June 19, 1983, 68th Leg., R.S., ch. 497, § 3, 1983 Tex. Gen. Laws at 2918–19 (amended 1993); *see also Thomason v. State*, 892 S.W.2d 8, 10 (Tex.Crim.App. 1994) (setting out the elements of theft and noting that, where the State alleges a facially complete offense in the indictment it "is held to the offense charged in the indictment,

regardless of whether the State intended to charge that offense"). Heimlich argues the evidence fails to show either (1) he acted with intent to deprive the complainant of property, or (2) he unlawfully appropriated property owned by complainant. We agree that the evidence is legally insufficient to demonstrate he appropriated property "owned" by the complainant.

The State correctly notes that the definition of "owner," for purposes of the Penal Code and the relevant statutory provision, is a person who:

(A) has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor; or

(B) is a holder in due course of a negotiable instrument.

TEX. PENAL CODE ANN. § 1.07(a)(35) (Vernon 1994). The State alleges the complainant was the owner of the check from the Veteran's Administration made payable to Heimlich because he was entitled to the commission the check represented. The State asserts Heimlich acted with intent to deprive the complainant of the commission when he induced the complainant to turn the instrument over to him for indorsement. The State's argument, however, is based on an erroneous view of commercial paper law.

Under Texas's enactment of the Uniform Commercial Code, a check is defined as a draft signed by the drawer, drawn on a bank and payable on demand, containing an unconditional promise or order to pay a sum certain in money. *See* TEX. BUS. & COM.CODE ANN. § 3.104 (Vernon 1994). The check from the Veteran's Administration was a draft containing an order to its bank to pay $5050 to Heimlich. While the complainant may have actually possessed the piece of paper called a "check," Heimlich remained the only person with a legal ownership interest in the thing of value the check signified—*the order to pay $5050.*[6] In fact, the complainant could not qualify as a holder in due course of the

---

6. The State seems to imply the complainant possessed an equitable interest in the funds covered by the order on the check. Without deciding whether this assertion is true, we note that the complainant's equitable interest would, nevertheless, remain a lesser interest than Heimlich's legal interest until the time that Heimlich was obligated to pay the funds to the complainant.

instrument because he was not a "holder" of the instrument. *See* TEX. BUS. & COM.CODE ANN. § 3.302(a) (Vernon 1994). To be a holder, one must be in possession of an instrument "*drawn, issued, or indorsed to him or to his order or to bearer or in blank.*" TEX. BUS. & COM.CODE ANN. § 1.201(20) (Vernon 1994) (emphasis added). Thus, prior to the complainant's relinquishment of the check to Heimlich, only Heimlich could qualify as a holder.

Nevertheless, the State argues the complainant was in possession of the check. This is correct, but without the value of the promise, which only Heimlich "owned" and could legally act upon, the complainant was in possession of a piece of paper worth, at the most, pennies.[7] Thus, Heimlich could not be convicted of theft of property of a value of more than $750 and less than $20,000 based upon his action in obtaining the commission check from the complainant. *See Freeman v. State,* 707 S.W.2d 597, 603 (Tex.Crim.App. 1986) ("the key to answering the question of which person has the greater right to possession of the property is who, *at the time of the commission of the offense,* had the greater right to possession of the property").

The State does not argue the evidence showed Heimlich appropriated property of the complainant at some later time. It could not feasibly argue Heimlich was still appropriating the check with intent to deprive the complainant of his property after Heimlich indorsed the check and returned it to the complainant for deposit into Heimlich's account. Obviously, Heimlich could have appropriated the money by gaining possession of the commission funds, using them for his own personal use, and refusing to tender payment to the complainant in the amount and at the time called for in their contract. Even if this is what Heimlich intended in the present case, he was never allowed to "appropriate" the funds because the complainant acted immediately and had legal authorities and the bank place a stop on Heimlich's account before he obtained use of the funds.[8]

Therefore, finding the evidence legally insufficient to support a finding that Heimlich unlawfully appropriated property of the complainant's, we sustain his second point of error. Having taken such action, it is no longer necessary for us to address Heimlich's first and third points of error.

We reverse and render a judgment of acquittal based upon the legal insufficiency of the evidence.

J. HARVEY HUDSON, Justice, dissenting.

The complainant, who was an independent contractor working as a salesman for appellant's real estate brokerage, was paid a commission by the seller of a house. The commission check was made payable to appellant. The complainant had no confidence in appellant's integrity and did not wish to surrender the check to appellant with only

---

**7.** The State asserts that Heimlich did not have the legal right to demand the delivery of the check and, hence, the complainant could have foregone ever handing the check over to him. It adds that the complainant could have "experienced a religious revelation" leading him to throw the check away, and yet Heimlich could still not maintain a cause of action against the complainant. While this assertion may be true, it points to the absurdity of the State's logic. If the complainant threw the check away, it would never be presented to the drawer's bank and, technically, the Veteran's Administration's obligation to pay Heimlich would remain outstanding. Thus, Heimlich could maintain a cause of action against the Veteran's Administration for the amounts owing because, even though the complainant had performed independent contractor services underlying the reason for payment of the commission, the right to the payment belonged to Heimlich's brokerage firm. In this manner, the arrangement in the present case was unexceptional. For example, if an attorney works as an independent contractor for a law firm and renders services for a client, the client pays the law firm for those services and the firm remunerates the independent contractor. Overall, the State's argument simply reiterates the fact that the only "property" the complainant conceivably possessed was the piece of paper upon which the order to pay Heimlich was written.

**8.** Admittedly, the situation raised somewhat of a catch–22. If the complainant was afraid Heimlich would steal the funds, he needed to act quickly so that the funds were not squandered by Heimlich. In order for Heimlich to commit a theft, however, Heimlich had to actually commit the crime. In the end, the complainant's swift action may have been the factor that kept Heimlich from committing the alleged crime.

his promise of reimbursement. Accordingly, the complainant did not give the instrument to appellant until he had first secured a "reimbursement" check from appellant in a like amount. The two men deposited their checks in their respective banks, but appellant immediately stopped payment on his reimbursement check.

The majority finds, as a matter of law, that no theft was perpetrated here because appellant, as the "holder" of the check, was the owner of the instrument and, thus, cannot be criminally liable for theft. While I agree that appellant was the "holder" of the check, this fact is irrelevant to the issue before us because appellant was never prosecuted for or convicted of stealing the check. The indictment alleged, and the jury found, appellant stole the complainant's *money*, not his check.[1]

In other words, the gravamen of the offense perpetrated here is *not* that appellant deposited the check into his account. On the contrary, the check was made payable to the appellant; he was the "holder" of the instrument; and the complainant voluntarily gave the check to the appellant with the intention that he should deposit the check into his account. Rather, the offense was committed when appellant deposited the check into his account *intending to deprive the complainant of the money by stopping payment on the reimbursement check.*

Money is not a tangible chattel. *See Riverside Nat. Bank v. Lewis,* 603 S.W.2d 169, 174 (Tex.1980). Although a check can be the means by which money is transferred, it is not, in itself, money. Here, the check is simply the instrumentality by which appellant received the money. *See Grogen v. State,* 745 S.W.2d 450, 451 (Tex.App.-Houston [1 Dist.] 1988); *Jackson v. State,* 646 S.W.2d 225, 226 (Tex.Crim.App.1983).

The evidence demonstrates the complainant had a greater right to possession of the money than did appellant. Thus, the complainant was the "owner" of the money re-

gardless of whether he was the "holder" of the check. *See* TEX. PENAL CODE ANN. § 1.07(a)(35) (Vernon 1994). When appellant transferred the money into his account and simultaneously blocked its subsequent transfer to the complainant's account, he unlawfully appropriated the complainant's money. It was not necessary for him to take physical possession of currency. *See Jones v. State,* 672 S.W.2d 812, 817 (Tex.App.-San Antonio 1983), *rev'd in part on other grounds,* 672 S.W.2d 798 (Tex.Crim.App.1984).

If the majority were correct, the State could never prosecute a defendant who, by false pretenses, persuades another to give him a check. For example, in *Swope v. State,* 723 S.W.2d 216 (Tex.App.-Austin 1986), *affirmed,* 805 S.W.2d 442 (Tex.Crim. App.1991), the defendant persuaded the complainant to give her a number of cashiers checks totaling more than half a million dollars. Pretending to be the heiress of a large estate in Switzerland, the defendant said she needed the money to pay some back taxes and thereby close-out her late husband's estate and obtain the assets. The defendant promised the complainant that she would return twofold the money lent to her. Each cashiers check was made payable to the defendant. Although the issue before us was not raised in *Swope,* the case exemplifies the type of scheme where a defendant steals money by deception via a check. In such cases, the defendant is the "holder" of the check, and he is the only person authorized to endorse, deposit, or cash the check. This fact, however, does not render him immune from prosecution for stealing the money transferred from the complainant's account by means of the check.

Here, the State established the check was for funds owed to the complainant as his sales commission. Appellant obtained the check from the complainant under the false pretense that he would transfer the money to the complainant's account via a reimbursement check. It is clear from the circum-

---

1. The indictment alleged in pertinent part that appellant, on or about August 26, 1993:

   ... did appropriate by acquiring and otherwise exercising control over property, namely, MONEY, owned by ERIC PETTORINO, hereaf-

   ter styled the Complainant, of the value of OVER SEVEN HUNDRED FIFTY DOLLARS AND UNDER TWENTY THOUSAND DOLLARS, with the intent to deprive the Complainant of the property.

stances and appellant's subsequent actions that he actually had no intention of transferring the money to the complainant's account. This is a simple case of theft. Accordingly, I respectfully dissent.