NUMBER 13-03-229-CR


COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG


 


PERRY LEE WOOTEN, Appellant,

v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 176th District Court


of Harris County, Texas.


 

 

MEMORANDUM OPINION



Before Justices Castillo, Garza and Wittig (1)

Memorandum Opinion by Justice Wittig

 Perry Lee Wooten, appellant, who was the elected Constable of Harris County
Precinct 7, appeals his conviction of theft by a public servant in an amount over $20,000
but less than $100,000. The jury assessed his punishment at confinement for 5 years in
the TDCJ- IC and a $1 fine. We will affirm the judgment.

I. Introduction


 The procedural and factual history is known to the parties and will not be reiterated. 
Tex R App. P 47.4. We previously ordered the record supplemented with the juror
information cards and the prosecutors' notes from the Batson hearing. The Clerk indicated
the notes were not in the record.

 In his first two issues, appellant contends the trial court erred in overruling two
Batson challenges. In his third issue he claims egregious harm because of the trial court's
failure to sua sponte instruct jurors on accomplice witness testimony at the guilt-innocence
stage. (2) Next, he argues the trial court erred in denying a mistrial after alleged jury
misconduct. In issue five he contends the trial court erred in limiting final argument to
twenty minutes and, finally, that the evidence is legally insufficient. 

 II. Batson Challenges

 In his first two issues, appellant argues the trial court was clearly erroneous in
overruling his Batson challenges. The Equal Protection Clause of the Fourteenth
Amendment and article 35.261 of the Texas Code of Criminal Procedure proscribe the
State's use of a peremptory challenge based solely on race, ethnicity, religion or gender. 
See Batson v. Kentucky, 476 U.S. 79, 81-82 (1986) (race). The exclusion of even one
minority venire member from the jury for racial reasons invalidates the entire jury selection
process. Keeton v. State 749 S.W.2d 861, 871 (Tex. Crim. App. 1988). Batson challenges
require first that the defendant, after objection, come forward with sufficient evidence to
make a prima facie showing the State engaged in purposeful discrimination. Batson, 476
U.S. at 96. Then the State must provide a race neutral explanation for striking the
prospective juror. Id. at 97-98. Thereafter, the defendant may rebut the State's proffered
reason to show it is merely a pretext concealing discrimination. Purkett v. Elem. 514 U.S.
765, 767-68 (1995). 

 We apply the "clearly erroneous" standard in reviewing the trial court's ruling in this
context. Williams v. State, 804 S.W.2d 95, 101 (Tex. Crim. App. 1991). Whitsey v. State,
796 S.W.2d 707, 713-714, (Tex. Crim. App. 1989), sets out several factors to be
considered: 

 1. The reason given for the peremptory challenge is not related to the facts
of the case; 


 2. there was a lack of questioning to the challenged juror or a lack of
meaningful questions; 


 3. disparate treatment-persons with the same or similar characteristics as
the challenged juror were not struck; 


 4. disparate examination of members of the venire, i.e., questioning a
challenged juror so as to evoke a certain response without asking the same
question of other panel members; and 


 5. an explanation based on a group bias where the group trait is not shown
to apply to the challenged juror specifically. 


See id. at 714. If, after viewing the evidence adduced relevant to the Batson claim in the
light most favorable to the trial court's ruling, it is determined that the explanations provided
by the State have not been overcome by the appellant as required by Batson and its
progeny, this Court will deem the trial court's ultimate conclusion that there was no
purposeful discrimination in the State's exercise of its peremptory challenges as not
"clearly erroneous." Williams, 804 S.W.2d at 101. 

 Regarding juror Antonio Price, appellant agues that the State's only reason for
striking this venireperson was the response that he visited his brother in prison. The State
did not strike another white panelist James Rutter, though he visited his son in jail. This,
according to appellant, indicates the State's reason for the strike was pretextual. Appellant
first argues that the State's facially legitimate reason is pretextual because the State's
policy was not evenly applied to blacks and whites. Second, the exclusion of Price was
racially motivated because the reason for striking Price was not related to the facts. Third,
this was the only question asked of Price. 

 We first observe that the State asked everyone on the venire whether they had
visited someone in jail or prison. The State followed up with panelists who indicated they
had visited someone. Price first indicated he had visited a relative. Then, in answer to
additional questions, Price stated the relative was his brother and, with further questioning,
indicated his brother was in prison for killing someone. Price eventually said his brother
was incarcerated for murder. In this series of answers, Price first minimized his
relationship (relative, rather then brother) and also minimized the crime (killing someone,
rather then murder). In response to questioning from the trial court, the prosecutor
indicated why Price was struck: "My reason for striking him is that he said that he visited
somebody in prison, and when I asked he said it was his brother, and that it was for
murder." Appellant argued to the trial court that white jurors who were not struck had
visited family members in the penitentiary.

 Appellant does not meet his burden by simply showing the State failed to strike one
similarly situated white juror. Disparate treatment cannot automatically be imputed in every
situation where one of the State's reasons for striking a venire member would technically
apply to another venire member whom the State found acceptable. Contreras v. State,
56 S.W.3d 274, 280 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd.). 

 Appellant argues that juror 35 was white and not struck, though he visited his son
in jail. However, even in isolation, juror 35's son was in jail "for D.W.I.," presumably a
misdemeanor. We do not believe a misdemeanor intoxication charge of a son is equally
comparable to a brother serving time in prison for murder. 

 We also note other panelists of various races were struck for similar responses to
the same questioning. The State struck panelist 21, a white female (brother-assault),
number 24, a Hispanic female (cousin-incarcerated), number 29, a black female (brother-revocation of probation), number 31, a black female (sister-drugs), and number 34, white
male (brother-in-law-drugs). Furthermore, by the time the State reached juror 35, whose
son was jailed for D.W.I., it had only one strike remaining. The State had already accepted
a black male, juror 26, a financial analyst who was struck by the defendant. There was no
indication that juror 26 visited anyone incarcerated. We cannot say Price was disparately
treated, that his treatment suggests racial motivation, or that the State's policy was not
evenly applied.

 Appellant contends the State's reasoning was not related to the facts, but cites no
cases that would indicate that a juror's encounter with crime and punishment are not
related to the felony charge. The State cites us to authority that indicates that striking a
panelist who had two imprisoned friends, or another panelist in the protected class who
had a brother in the penitentiary, coupled with other circumstances, was a legitimate, race
neutral ground for a challenge. See Emerson v. State, 851 S.W.2d 269, 272 (Tex. Crim.
App. 1993). It would seem reasonable to expect that the State could inquire who had
friends or relatives in jail, just as the defense might inquire who had friends that were
prosecutors, police, or criminal investigators. Potential bias or prejudice about the criminal
justice system is a valid inquiry.

 A number of cases hold that the arrest or conviction of a venireperson's relative is
a race-neutral explanation for striking that venireperson. Munson v. State, 774 S.W.2d
778, 779-80 (Tex. App.-El Paso 1989, no pet.); Perry v. State, 770 S.W.2d 950, 952 (Tex.
App.-Fort Worth 1989, no pet.); Wilson v. State, 769 S.W.2d 682, 683 (Tex.
App.-Beaumont 1989, no pet.). We find the State's questions for the voir dire in the
instant case to be meaningfully related to the facts.

 Finally, appellant premises part of his argument on the fact that only one question
prompted the strike. As we indicated above, the prosecutor propounded several follow-up
questions. We also note the seeming reluctance of Price to give a complete answer. 
Furthermore, Price was not singled out with a solitary question but was given the same
question presented to all the venire. Other jurors, black, white, and Hispanic were asked 
questions similar to those propounded to Price. Here, appellant did not meet his burden
to demonstrate to the trial court that the State's race-neutral reason for striking Price was
pretextual. As a result, we find that the court's ruling was not clearly erroneous. Contreras
56 S.W.3d at 280; Johnson v. State, 68 S.W.3d 644, 650 (Tex. Crim. App. 2002).

 In his second issue, appellant repeats his Batson concerns regarding Gertrude
Johnson. The State's proffered reason for striking Johnson stated: 

 On Juror 29, I'd like the record to reflect that she is a counselor with the
Texas Rehabilitation. I have down there hostile, underlined, twice. When I
asked her if she had ever visited anyone in jail, I got-I mean, and I think my
co-counsel noticed it, too, that she appeared very put out and seemed
hostile that I'd asked her that question.


Appellant reiterates most of the same arguments he made concerning Price. First, he
asserts that the fact the State failed to strike another white juror who visited a relative
suggests disparate treatment. We have already addressed this argument and need not
reiterate. Second, appellant argues that the State did not strike white venire number 33
who "also" worked at TIRR. (3) However, as the State points out, there is no showing that
TIRR and the Texas Rehab Commission are the same. Further, Johnson was a counselor
and number 33 was a health care worker. Appellant argues the reason was not related to
the case and appeared to be based upon a group bias, citing Musick v. State, 862 S.W.2d
794, 802 (Tex. App.-El Paso 1993, pet. ref'd) (it is not legitimate to apply an
occupation-based, group bias to a prospective juror without inquiring whether the bias
applies specifically to the venireperson). However, the only reply by appellant to the trial
court was to the effect that there were white jurors not struck who visited family members
in the penitentiary. Appellant therefore did not rebut the facially neutral motive given by the
State. See Davis v. State, 822 S.W.2d 207, 211-12 (Tex. App.-Dallas 1991, pet. ref'd)
(appellant failed to provide any evidence to rebut that the State expended its peremptory
challenges in a facially neutral manner so that an appellate court could rationally infer that
the State engaged in purposeful racial discrimination). 

 Appellant also contends the State failed to articulate for the record any specific body
language or non-verbal actions substantiating the State's allegation that the venireperson
was hostile, citing Hill v. State, 827 S.W.2d 860, 870 (Tex. Crim. App. 1992). However,
in Hill, the prosecutor specifically stated the venireperson would identify with the accused
because he was black: "because I felt like he would identify with the defendant. He's
black, he's male, and I didn't like the way he responded to my questions." Id. at 869-70. 
The court noted that the venireperson was a black man with over twenty years of
employment with AT&T and the interchange with the prosecutor was benign. Id.; see also
Thieleman v. State,187 S.W.3d.455, 458 (Tex. Crim. App. 2005). An uncontroverted
assertion by counsel about an event, particularly a non-contemporaneous assertion, may
be taken as true only if: (1) the event could not have happened without being noticed; and
(2) the assertion is of the sort that would provoke a denial by opposing counsel if it were
not true. Thieleman, 187 S.W.3d. at 458. If these two conditions are met, the opposing
party may be held to have adoptively admitted the assertion, and the assertion will be
accepted as both true and sufficient to preserve an issue for appellate review. Id. 

 In any event, a prosecutor may ordinarily strike a potential juror based upon
legitimate, non-discriminatory "hunches." See Smith v. State, 814 S.W.2d 858, 861-62
(Tex.App.-Amarillo 1991, no pet.). Appellant did not meet his burden to show that the
State's race-neutral reason for striking Johnson was pretextual. As a result, we find that
the court's ruling was not clearly erroneous. Contreras, 56 S.W.3d at 280; see also
Johnson, 68 S.W.3d at 650.

 III. Jury Misconduct

 Appellant complains the trial court did not grant either of his two motions for mistrial. 
The first motion was belatedly made after the guilty verdict and concerned conduct that
occurred either the first day of trial or sometime earlier during the guilt stage. The
misconduct alleged was that Juror Descamps took photographs of the defendant during
the trial. The motion was denied and thereafter counsel added that this was the same juror
who came up to defense counsel and asked why she was selected. 

 To preserve error for appellate review, we apply a four-part test. Dixon v. State, 2
S.W.3d 263, 265 (Tex. Crim. App. 1998). The complaining party must make a timely,
specific objection. Armstrong v. State, 718 S.W.2d 686, 699 (Tex. Crim. App. 1985). The
objection must be made at the earliest possible opportunity. Marini v. State, 593 S.W.2d
709, 714 (Tex. Crim. App. 1980). The complaining party must obtain an adverse ruling
from the trial court. DeRusse v. State, 579 S.W.2d 224, 235 (Tex. Crim. App.1979). 
Finally, the point of error on appeal must correspond to the objection made at trial. 
Thomas v. State, 723 S.W.2d 696, 699 (Tex. Crim. App.1986). The record does not reveal
a timely specific objection and is therefore waived. See Dixon 2 S.W.3d at 265.

 The second seemingly timely motion dealing with Descamps' conduct is
problematic. During the punishment phase, defense counsel argued for a mistrial because
the defendant told his counsel, who told the trial court, that Descamps looked at the
defendant and called him a "son-of-a-bitch." According to counsel, the juror constantly
made "visual faces," leaned over and whispered to the lady next to her and leaned forward
and "whispered to the jurors between her." The motion for mistrial was denied and all
jurors admonished not to talk with each other. The trial court declined to specifically
admonish Descamps. 

 On appeal, appellant for the first time argues for reversal on the basis of juror bias
affecting appellant's constitutional right to an impartial trial. However, a party's failure to
object generally waives all error unless the statement is so prejudicial that no instruction
could have cured the harm. Higdon v. State, 764 S.W.2d 308, 310 (Tex.App.-Houston
[1st Dist.] 1988, pet. ref'd). (4)

 We first observe that the objection making "visual faces" is not specific and is
subject to interpretation. Assuming the faces were not very nice, we cannot say they were
aimed at the defendant and could well have been toward his counsel or counsel's manner
of questioning, or the witness's answer. The problem of jurors whispering to one another
is not unknown at the courthouse and, presumably, was corrected by the admonition. 
Finally, the statement concerning the alleged name-calling from Descamps to the
defendant was hearsay, although the State did not object. At a minimum, this could
influence the weight to be given to the hearsay statement by the trial court in the exercise
of its discretion. 

 A mistrial is called for when there is error so prejudicial that continuation of the trial
would be futile. Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App.1999) (applying abuse
of discretion standard). The absence of prejudice is buttressed by the relatively light
sentence imposed by the jury in this phase of the trial. Appellant was subject to twenty
years in the penitentiary but received only five years. He was subject to a $100,000 fine,
but received only a $1 fine. We cannot say the trial court abused its discretion under the
discrete facts and hearsay here presented.

 IV. Twenty Minute Argument

 Appellant contends the trial court abused its discretion by not allowing one additional
minute to argue on behalf of his client. It is perplexing, why after six days of trial and
twenty-three witnesses, the trial court could not indulge the defendant one additional
minute. After all, appellant was the duly elected constable of Precinct 7, and stood to lose
not only his position but also be incarcerated for up to twenty years. Appellant argues the
same trial court's refusal to allow additional time caused a reversal in Dang v. State, 154
S.W.3d 616, 621 (Tex. Crim. App. 2005). Dang holds that reviewing courts should
consider, but are not limited to considering, the following non-exclusive list of factors on a
case-by-case basis: (1) the quantity of the evidence; (2) the duration of the trial; (3)
conflicts in the testimony; (4) the seriousness of the offense; (5) the complexity of the case;
(6) whether counsel used the time allotted efficiently; and (7) whether counsel set out what
issues were not discussed because of the time limitation. Id. We will apply these factors
to this case. 

 Our review of the closing argument suggests that indeed both the quantity of the
evidence, including almost 1000 exhibits, and duration of the trial would suggest to most
objective onlookers that the request for one more minute was not unreasonable and should
have been granted. Although appellant argues that there were conflicts in the testimony,
appellant did not point this out to the trial court, nor does he specify these conflicts to us. 
The State contends that a potential twenty-year sentence is light, but we agree with
appellant that most would find such a sentence to be serious, particularly with the
involvement of a public official. The facts, though numerous, were not particularly complex,
and the court's charge was only five pages in length. While some might criticize splitting
the defendant's final argument between two attorneys, each brought a different perspective
on behalf of appellant, particularly with one of the attorneys status as a former State
District Judge. We cannot say counsel did not effectively use their time. Unfortunately,
appellant did not set out to the trial court what additional arguments counsel would have
made and furthermore did not object when the trial court initially limited each side to twenty
minutes. One defense counsel even stated to the trial judge that argument did not assist
the jury. We disagree. Still, we would question the effectiveness of seeking additional
time while gratuitously remarking it would not do any good anyway.

 We agree with appellant that closing argument is of fundamental and constitutional
importance to a criminal trial. This panel would agree subjectively that additional time
should have been granted. However, the test we must follow is objective and appellant
must show that the trial court abused its discretion in light of its broad discretion. 
Hernandez v. State, 506 S.W.2d 884, 886 (Tex. Crim. App. 1974). Although the trial
court's action once again precipitously approaches the outer limits of reasonableness, we
cannot say the trial court abused its discretion.

 V. Legal Sufficiency

 Appellant contends the evidence is not legally sufficient. Review for legal sufficiency
assesses the evidence in the light most favorable to the jury's verdict and is the minimum
standard for comporting with federal due process as stated in Jackson v. Virginia, 443 U.S.
307, 319 (1979) (after viewing the evidence in the light most favorable to the prosecution,
could any rational trier of fact find the essential elements of the crime beyond a reasonable
doubt). Appellant was indicted for the second-degree felony of theft by a public servant
in an amount over $20,000 and less that $100,000. Tex. Pen. Code Ann., § 31.03(f)(1)
(Vernon 2005).

 Appellant advances three contentions regarding legal sufficiency which we address
in order. First, appellant argues that the State alleged the wrong owner in the indictment. 
He disputes that Garner was an owner or possessor of the property and contends that
Garner did not have a greater right to possession of the stolen money than appellant. 
Garner was the Chief Assistant Harris County Auditor, who was responsible to verify that
county funds were protected. This issue was recently decided in Biagas v. State, 177
S.W.3d 161, 168 (Tex. App.-Houston [1st Dist.] 2005, pet. ref'd). (5) Our record, like that in
Biagas, shows that Harris County required appellant or a Harris County supervisor (working
for appellant) to verify work before it would release funds to A-Temps. Thus, Harris County
actually approved the time sheets before A-Temps received payment and issued any
checks. "Such evidence shows that Harris County maintained control over the funds, and
absent Biagas's misrepresentations, would not have released the funds." Id. 

 In a bifurcated argument, appellant contends there is no proof he acted either alone
or as a party. He cites Heimlich v. State, 988 S.W.2d 382, 386 (Tex. App.-Houston [14th
Dist.] 1999, pet. ref'd.) (no theft was perpetrated here because appellant, as the "holder"
of the check, was the owner of the instrument and, thus, cannot be criminally liable for
theft). We believe Biagas more closely addresses and disposes of the factual scenario we
are presented. See id. 

 Over $200,000 of illicit payments were made through the county to various friends
and employees of appellant. The record reveals that appellant micro-managed the office
and was hands-on in its day-to-day operations. Although appellant's personal bank
account received $15 deposits every two weeks, he borrowed $5200 and $3000 from an
employee, much of which was not repaid. Appellant sold honorary deputy badges and
clergy badges furnished by the County for cash and spurned the use of receipts. He did
not account for these funds for the sale of County property. He sought to increase his
employees' compensation and hired Craig Cooper to seek additional funding. 

 Appellant had a "real close" relationship with Angela Holden, whom the defense
sought to blame for the misappropriation of funds. Nevertheless, appellant signed some
of the time sheets which allowed and requested that unlawful payments be made to her. 
Appellant initially authorized the illicit payments to Holden. They engaged in frequent
closed-door meetings in appellant's office and appellant was present when she signed his
name to documents on five to ten occasions. Other employees were excluded from their
meetings. Holden was not authorized to receive A-Temps compensation as a county
employee but appellant authorized payments to her. Appellant spoke with A-Temps
supervisors and its owner a number of times. Some A-Temps time sheets showed Holden
working over 80 hours per week while contemporaneously working full time for the county. 
She received and cashed over forty thousand dollars worth of illicit checks. 

 Appellant similarly placed other ineligible county employees on A-Temps rosters. 
Additionally, he sanctioned A-Temps compensation to two people living with Holden,
Biagas (her son) and Green (her cousin). Both cashed some of their checks and gave the
money to Holden. Other checks were placed in Holden's account. Both appellant and
Holden approved monetary increases to appellant's employees and others placed on A-Temps. Appellant personally verified to A-Temps that Green should be receiving
compensation although he denied this action to an investigator. According to the
testimony, appellant was heard to state that he wanted certain people's names removed
from A-Temps so the people "downtown" would not know what he was doing. "There's no
paper trail on me, they don't have anything on me, there's no paper trail."

 Appellant also used federal funds provided to TXDOT to fund extra hours of work
for supposedly eligible traffic and traffic ticket writing activities (STEP program). He
instructed an employee to "get the money." Instead of using the funds for six officers who
did qualify, he tore up that list and substituted seven ineligible employees. Appellant was
required to sign off on all STEP paperwork, but often requests for payment were submitted
without the necessary paperwork. People were paid whose only working connection to
appellant were as chauffeurs, running personal errands, or watching TV with the constable
while "on duty." Appellant intentionally kept Jesse Mark, traffic enforcement supervisor,
out of the loop although the program was designed for his employees. Harris County paid
appellant's selected employees $32,000 in misappropriated funds. Some who received
the largess did not do any work for the grant. An additional $221,102.69 was paid illegally 
under A-Temps, including $49,123.83 to Holden.

 Appellant also presented inconsistent accounts to the County Auditor, the grand
jury, and the District Attorney's office.

 We find ample evidence to show beyond a reasonable doubt that appellant acted
either alone, as a party, or both.

 Finally, as to corroboration of accomplice testimony, appellant argues that the only
evidence connecting him to the theft was the accomplice testimony of Cooper, Smart,
Shelly, and Green. The State disagrees that two of these witnesses were accomplices as
a matter of law. We will assume, for the sake our review, all four were accomplices. 
Appellant argues that mere presence at the scene of the crime is insufficient citing, inter
alia, Cruz v. State, 690 S.W.2d 246, 250 (Tex. Crim. App. 1985) (test to determine the
sufficiency of the corroboration is to eliminate from consideration the testimony of the
accomplice witness and then examine the testimony of the other witnesses to ascertain if
there is inculpatory evidence which tends to connect the accused with the commission of
the offense). In Cruz, the State could not put the accused at the scene, connect him with
the pistol or rifle at issue, the caliber of the wounds were unknown, and scanty scientific
evidence did not connect the accused with the several days old murder. Id. at 259. The
State counters with Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999) which
holds:

 Under Article 38.14, a conviction cannot stand on accomplice testimony
unless it is corroborated by other evidence tending to connect the defendant
with the offense; the evidence is insufficient if it proves merely the
commission of the offense. It is not necessary that the corroborating
evidence directly connect the defendant to the crime or that it be sufficient
by itself to establish guilt; it need only tend to connect the defendant to the
offense. If the combined weight of the non-accomplice evidence tends to
connect the defendant to the offense, the requirement of Article 38.14 has
been fulfilled. (Citations omitted).


Id. Cathey holds that legal and factual sufficiency standards do not apply upon a review
of accomplice witness testimony under Article 38.14. Id. The burden established by the
Legislature is that there be other evidence tending to connect the defendant with the
offense. Id. 

 Other evidence tending to connect appellant with the offense includes the testimony
of the other nineteen witnesses. These included the assistant County Auditor, other
members of the Constable's staff, the assistant District Attorney for fraud examination, and
appellant's admissions to witnesses as well as his inconsistent statements to various
authorities. Appellant concedes that his people "looted the coffers of Harris County,"
claiming instead the looting was accomplished by accomplices and his close confidant
Holden. (6) Nearly 1000 exhibits, including some with appellant's signature, showed
appellant to be more than merely present. Other testimony outlined above directly linked
appellant with illegally obtaining funds through both programs. While much of appellant's 
connection to the A-Temps thefts was principally through Holden, the evidence shows
appellant was directly involved in obtaining the illicit funds and orchestrating this theft of
county funds both as a principal as well as through Holden. Direct evidence showed his
complicity with the STEP program thefts. We overrule this issue.

 VI. Jury Charge on Accomplice Testimony

 Appellant complains on appeal that he was entitled to an accomplice testimony
charge but did not object or offer a change to the charge given. Therefore, under Almanza
v. State, 686 S.W.2d 151, 171 (Tex. Crim. App. 1984), he or the record must show that he
has suffered "egregious harm." Under the Almanza standard, the record must show that
a defendant has suffered actual rather than merely theoretical harm from jury instruction
error. Thanh Cuong Ngo v. State, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005). Errors
that result in egregious harm are those that affect "the very basis of the case," "deprive the
defendant of a valuable right," or "vitally affect a defensive theory." Id. 

 In Ngo, appellant argued that he suffered actual harm from the faulty jury instruction
and that he was, in fact, deprived of his valuable right to a unanimous jury verdict. Id. 
That court concluded that appellant suffered "egregious harm" when the jury was
repeatedly told that it need not return a unanimous verdict. Id. Such is not the case here.

 Appellant urged that it was Holden, not he, that obtained the illicit funds. His
defense suggested that Holden forged his signature. Other evidence, however, showed
that appellant himself signed specific requests to set up the scheme and signed some of
the requests for payments thereunder. He confirmed illicit payments with A-Temps directly. 
Under the evidence, the otherwise correct portions of the court's charge, and this record,
we cannot conclude the trial court's error affected the very basis of the case, deprived him
of a valuable right, or vitally affected a defensive theory. Id. 

 The judgment is affirmed. 


 DON WITTIG

 Justice



Dissenting Memorandum Opinion 

by Justice Errlinda Castillo.


Do not publish.

Tex. R. App. P. 47.2(b).

 

Memorandum Opinion delivered and

filed this 30th day of November, 2006.


1. Retired Fourteenth Court of Appeals Justice Don Wittig assigned to this Court by the Chief Justice
of the Supreme Court of Texas pursuant to the government code. Tex. Gov't code ann. § 74.003 (Vernon
2005).
2. For context, we discuss this issue out of order.
3. Johnson's juror information card indicated she worked at the "Texas Rehab Commission." Juror
#33's card indicated he worked at "T.I.R.R." in the field of "Health & Fitness."
4. Nor are we presented with a situation like Thieleman. 187 sw3d at 458, because the observation
was not made by an officer of the court but rather was hearsay from an interested party re-told to the court
by his attorney. 
5. This companion case involved Holden's son Biagas, one of the beneficiaries of appellant's largess.
6. Appellant's brief at 29.