

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0197-17

**DONDRE JOHNSON, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

KEEL, J., delivered the opinion of the Court in which ALCALA, RICHARDSON, NEWELL, and WALKER, JJ., joined. YEARY, J., filed a concurring opinion. WALKER, J., filed a concurring opinion in which KELLER, P.J., joined. KEASLER and HERVEY, JJ., concurred.

### O P I N I O N

A jury convicted Appellant of two counts of theft of money between $1,500 and $20,000 and assessed his punishment in each case at the maximum of two years in the state jail and a fine of $10,000. In a split opinion the Fort Worth Court of Appeals reversed both convictions for insufficient evidence. *Johnson v. State*, 513 S.W.3d 190 (Tex. App. — Fort Worth 2016). We granted the State's petition for discretionary

review. We hold that the lower court erred in its application of the standard of review, reverse its judgment and remand the case for that court to address Appellant's remaining points of error.

## Legal Sufficiency Standard of Review

To evaluate the legal sufficiency of the evidence an appellate court must view the evidence in the light most favorable to the prosecution and ask whether any rational trier of fact could have found each element of the offense beyond a reasonable doubt. *Musacchio v. United* States, 136 S. Ct. 709, 715 (2016); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Ramsey v. State*, 473 S.W.3d 805, 808 (Tex. Crim. App. 2015). Appellate review "does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Musacchio*, 136 S. Ct. at 715, quoting *Jackson*, 443 U.S. at 319. Legally sufficient evidence need not exclude every conceivable alternative to the defendant's guilt, *Ramsey*, 473 S.W.3d at 811, and the law requires no particular type of evidence. Direct and circumstantial evidence are equally probative, and "circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

## Background

Appellant ran the Johnson Family Mortuary ("JFM"). JFM was owned by Appellant's wife, Rachel Hardy Johnson ("Hardy"). JFM did not have a crematory and

sub-contracted cremations to other providers. Appellant was charged with theft because he accepted payments for cremations that were never performed.

The failures to cremate came to light because JFM was behind on rent. The landlord, suspecting an abandonment of the lease, visited the mortuary and found a number of decomposing bodies inside the building on July 15.[1] The Tarrant County Medical Examiner's Office identified the bodies of six adults and two infants with dates of death ranging from January 2, 2013, to June 30. The medical examiner's office also discovered on the premises eight sets of cremated remains ("cremains") and five empty boxes labeled as if they had once contained cremains.

Count One alleged theft of money from Margaret Francois. She and Appellant entered into an agreement on July 1 for the cremation of Patricia Baptiste. She paid for the cremation on July 7 with a cashier's check for $1,500 made out to JFM. The check was endorsed by Hardy and deposited into JFM's account the next day. Baptiste's decomposing body was among those discovered on July 15.

Count Two alleged an aggregate theft. Several people paid Appellant cash for memorial services for and cremation of Karen Jones; one person paid him cash for memorial services for and cremation of Helen Jones; and one person paid him cash for memorial services for and cremation of Titus Harrison. Although Appellant fulfilled his promises to hold their memorial services, he did not cremate the dead, and their badly

---

[1] Unless otherwise noted, all dates throughout this opinion reference 2014.

decomposing bodies were among those found inside JFM on July 15.

The court of appeals held the evidence was insufficient as to both counts to show Appellant's intent to deprive at the time of payment. As for Count 1, it also held the evidence was insufficient to show appropriation.

## Intent to Deprive

Theft is the unlawful appropriation of property without the effective consent of the owner with the intent to deprive the owner of property. TEX. PENAL CODE § 31.03(a). Consent is not effective if induced by deception. TEX. PENAL CODE § 31.01(3)(A). "Deception" in the context of this case means

> promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

Tex. Penal Code § 31.01(1)(E). In a theft case arising from a contract, the State must prove that the accused intended to deprive the owner of the property when it was taken. *Taylor v. State*, 450 S.W.3d 528, 536 (Tex. Crim. App. 2014), quoting *Wirth v. State*, 361 S.W.3d 694, 697 (Tex. Crim. App. 2012). Intent can be demonstrated by proof that the accused engaged in other similar, recent transactions. *See* TEX. PENAL CODE § 31.03(c)(1).

Count One

In holding the evidence insufficient to show Appellant's intent to deprive Francois

of $1,500 when he accepted her check for the cremation of Baptiste, the majority below observed that the payment was made "only eight days" before Baptiste's body was discovered. *Johnson*, 513 S.W.3d at 199. It failed, however, to consider that by the time Francois paid Appellant it was impossible for him to carry out Baptiste's cremation because JFM did not have a funeral director in charge ("FDIC").

According to the testimony, a funeral home cannot conduct business without an FDIC. The FDIC is responsible for, among other things, filing reports of death and securing death certificates. TEX. OCC. CODE § 651.403; TEX. HEALTH & SAFETY CODE § 193.002. Death certificates cannot be had without an FDIC, and cremations cannot be performed without death certificates. Death records are created and maintained via the Texas Electronic Registration system ("TER").

In early 2014 Appellant hired Michael Pierce as JFM's FDIC. Hardy created Pierce's password for the TER. According to Pierce's testimony, JFM used his license without his permission for services that he did not oversee. Pierce tried to withdraw as JFM's FDIC in May and officially succeeded in doing so on July 1. On the same day, someone from JFM tried and failed to secure a death certificate for Baptiste using Pierce's license. Appellant and Hardy had both been instructed on the use of the TER. Since the evidence showed that Appellant ran JFM's day-to-day operations in 2014, it is reasonable to infer that he made the futile effort on July 1 to obtain Baptiste's death certificate. Thus, when Francois gave Appellant the cashier's check on July 7, a rational

jury could conclude that Appellant knew that he would not carry out Baptiste's cremation.

The court of appeals majority, however, regarded the failed effort to secure a death certificate as a sign that Appellant intended to perform the cremation. *Johnson*, 513 S.W.3d at 201. It did not seem to consider that it was impossible at that point for JFM to carry out a cremation, and it substituted its judgment for that of the jury. It also failed to weigh the evidence of Appellant's other recent, similar transactions in which he deceived cremation customers. We address that evidence below in our discussion of Count Two.

Count Two

With respect to Count Two, the court of appeals majority noted that Appellant performed part of each contract: memorial services and wakes for Karen Jones and Helen Jones and a funeral service for Harrison. *Id*. at 201. It reasoned that the evidence showed an intent to delay cremation but not necessarily an intent not to cremate at the time he was paid. *Id*. "The record reflects a history of problems with necessary paperwork, and long delays in completing mortuary services. But there is no evidence of an intent never to perform the services." *Id*. To reach that conclusion, the majority below had to ignore the evidence of Appellant's deceptive practices in his dealings with the complainants in Count 2.

For example, Helen Jones's son Frederick paid for her cremation in April, but her body was one of those found decomposing inside JFM on July 15. In the intervening months when Frederick asked about his mother's remains, Appellant repeatedly put him

off with the excuse that he was waiting for the death certificate. The dishonesty of that excuse was revealed by the TER which showed no effort to obtain a death certificate for Helen Jones. Count Two's other complainants received the wrong cremains. Appellant gave Karen Jones' daughter the cremains of Sandra Baldwin; and he gave Jabarei Clark's ashes to the mother of Titus Harrison. The court of appeals acknowledged Appellant's deception of Count Two's complainants in its summary of the evidence, *id*. at 200, but did not factor it into its evaluation of the sufficiency of the evidence. *Id*. at 201.

The lower court also ignored evidence of two extraneous instances of deception by Appellant, omitting their details entirely from its opinion. In one instance Appellant delivered unknown ashes to the family of Larry Ray Davis in January and represented them as Davis's. In fact Davis was not cremated until February, and his cremains were found inside JFM on July 15. Similarly, Appellant gave Opal Anderson's ashes to Aundrea Jones's daughter, and Aundrea's remains were never found.

Appellant's deceptive practices were circumstantially corroborated by other evidence discovered at JFM on July 15, namely the five empty cremains boxes, the one almost-empty cremains box, and the unidentified box of cremains. The court of appeals' only mention of this physical evidence was a reference to "ashes" found by authorities on July 15. *Johnson*, 513 S.W.3d at 193. This evidence, in combination with Appellant's lies to his customers, suggested that he was engaged in a kind of Ponzi scheme in which he delivered earlier ashes for later bodies.

The lower court's opinion also overlooked the fact that cremains are not supposed to be fungible. The complainants did not pay simply for cremation but for the return of their respective loved ones' cremains. Given Appellant's repeated misrepresentations about whose ashes he was delivering to his customers, a rational fact finder could conclude that he knew at the time of payment that, even if he did eventually cremate a given body, the resulting cremains would not end up in the right hands, an aspect of these theft cases that the lower court did not consider.

Viewing the evidence in the light most favorable to the convictions, a rational jury could conclude that Appellant accepted payment for cremations that he knew he would not perform in both counts of the indictment. The lower court erred in its evaluation of the sufficiency of the evidence by disregarding or re-weighing incriminating evidence.

## Appropriation

The majority opinion below also held that the evidence was insufficient to show that Appellant appropriated money as alleged in Count One of the indictment. *Id.* at 199. The court reasoned that because Appellant did not own JFM and was not a signatory on its bank account his possession of Francois's check did not prove that he exercised control over the money it represented. *Id.* "When Appellant possessed the check, he did not possess the $1,500. He 'was in possession of a piece of paper worth, at the most, pennies.'" *Id.*, quoting *Heimlich v. State*, 988 S.W.2d 382, 385 (Tex. App.— Houston [14th Dist.] 1999, pet. ref'd). This is a dubious assertion because one need not be a

signatory on a bank account in order to deposit a check into it. But regardless of the assertion's merits, it is irrelevant here because Francois's check was deposited and spent. *Compare Orr v. State*, 836 S.W.2d 315, 319 (Tex. App. —Austin 1992, no pet.) (theft of money not proven for lack of evidence that money orders were negotiated).

The court of appeals rejected the State's argument that Appellant was guilty as a party with his wife because it found no evidence that Hardy intended not to cremate Baptiste or knew that Baptiste would not be cremated when Francois paid for the service. *Johnson*, 513 S.W3d at 197. The court erred to acquit Appellant for lack of evidence about Hardy's intent or knowledge.

The law of parties authorizes conviction for the collective conduct of two or more people. "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." Section 7.01(a).[2] Under Section 7.02(a)(2) a person is criminally responsible for the conduct of another if he intends commission of the offense and does something to help the other person to commit it:

> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

Section 7.02(a)(2) requires evidence that the defendant intended commission of the crime

---

[2] Throughout the remainder of this opinion, references to "Section" are to the Texas Penal Code.

and did something to help the other to commit it; it does not require evidence of the other person's intent. The lower court's requirement that the other intend the commission of the crime finds no support in the text of Section 7.02(a)(2) and ignores Section 7.01(a)'s "or by both" collective-conduct basis for criminal responsibility.

The lower court's holding also runs afoul of Section 7.03(2) which stipulates that it is no defense to party liability that the other person was acquitted of the offense. If an outright acquittal of Hardy would have offered Appellant no defense to party liability, then insufficient evidence of her intent in Appellant's trial should offer him no defense either, and the court of appeals erred to acquit him on that basis.

The lower court's reliance on *Heimlich* is also misplaced. *Heimlich* held that the defendant never appropriated the funds from a check deposited into his account because the complainant managed to place a freeze on the defendant's account before the defendant accessed the funds. 988 S.W.2d at 385. In this case the check was deposited and the money was spent.

The majority below also seemed to hold that the evidence was insufficient because the obligation to fulfill the contract with Francois belonged to JFM and not Appellant, its employee. *Johnson*, 513 S.W.3d at 199. It cited *Heimlich*'s hypothetical situation involving a law firm, but that does not apply here because Appellant's guilt was established by legally sufficient evidence; he accepted payment for a cremation he knew he would not perform; he gave the check to Hardy; and Hardy deposited it. Appellant's

intent and efforts to assist the commission of the crime plus Hardy's appropriation of the check equal theft regardless of his status as an employee of JFM.

## Conclusion

The evidence was legally sufficient to support Appellant's two theft convictions. We reverse the judgment of the court of appeals and remand for consideration of Appellant's remaining points of error.

Delivered: November 7, 2018

Publish